**Rodney McGAUTHA, Appellant,**

v̇.

**JACKSON COUNTY, MISSOURI, COLLECTIONS DEPARTMENT, Appellee.**

**No. 94–1532.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1994.

Decided Sept. 30, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 14, 1994.

Kenneth R. Battis, Fairway, KS, argued, for appellant.

Earlene J. Farr, Kansas City, MO, argued, for appellee.

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.

WOLLMAN, Circuit Judge.

Rodney J. McGautha filed suit against his employer, Jackson County, Missouri, under 42 U.S.C. §§ 1981 and 1983. He appeals from the judgment entered on the jury's verdict in favor of the county, alleging error in the district court's jury instruction regarding municipal liability. Additionally, McGautha alleges that the district court abused its discretion in precluding the jury from hearing evidence regarding an earlier demand for arbitration and receipt of an arbitration award. We affirm.

## I. Background

McGautha worked in the county's collections department from October 1984 through February 10, 1989. Initially hired as a temporary employee during the 1984 billing season, he became a permanent employee in early 1985. McGautha was assigned to the taxpayer services unit, one of five units within the collections department.

McGautha applied for and was denied numerous promotions during the course of his employment with the county. In February 1988, he filed a union grievance and EEOC charge when he was not promoted to the position of delinquent tax collector. In August 1988, he filed another grievance, alleging that the supervisor and lead clerks in the department were constantly monitoring his activities. McGautha's performance ratings were typically satisfactory throughout his employment, and several of the promotions that he was denied went to other black employees of the department.

In the fall of 1987, a group of employees sent an anonymous memo to department director Michael Pendergast, department manager Beverly Ross Elving and several county officials. This memo detailed complaints about a number of working conditions, including racial discrimination concerns, in the collections department. In early October, several employees met with Ross Elving about their concerns. McGautha was not among them. The parties dispute whether supervisory officials took proper remedial action.

McGautha's section 1981 and 1983 claims of race discrimination and unconstitutional infringement of freedom of association in connection with his promotion denials were tried by a jury. Three additional Title VII claims raising substantially the same issues were tried by the court. The jury returned a verdict for the county on all claims, as did the court on the Title VII claims.

## II. Jury Instruction on Municipal Liability

Jury Instruction Number 8 provided in relevant part:

In this case, you are instructed that the county's policy-making officials are the Jackson County Legislature and the Jackson County Executive.

You are instructed that Beverly Ross [Elving], Mike Pendergast, Thomas Hoppe, Robert Perkins, Joy McGuire, Cindy Geither Hansman and Shirley Orlando were not officials whose acts constitute final official policy of Jackson County, Missouri.

To establish the existence of a governmental custom of failing to promote based on a violation of constitutional rights, a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policy-making officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

Proof of a single incident of unconstitutional activity is insufficient to establish a custom or practice.

### a. Official Policy

Municipal liability under 42 U.S.C. § 1983 arises if injury results from "action pursuant to official municipal policy of some

nature." *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Respondeat superior does not apply under section 1983 because municipal liability is limited to conduct for which the municipality is itself actually responsible. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *Monell,* 436 U.S. at 691–92, 98 S.Ct. at 2036–37. Designation of the official or body responsible for the challenged policy is a matter of state law determined by the court. *Jett,* 491 U.S. at 737, 109 S.Ct. at 2723–24; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 924–25, 99 L.Ed.2d 107 (1988) (plurality opinion); *see Jane Doe A v. Special Sch. Dist.,* 901 F.2d 642, 645 (8th Cir.1990).

■ Although municipal liability for violating constitutional rights may arise from a single act of a policy maker, *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–84, 106 S.Ct. 1292, 1299–1301, 89 L.Ed.2d 452 (1986) (plurality opinion); *Angarita v. St. Louis County,* 981 F.2d 1537, 1546 (8th Cir.1992), that act must come from one in an authoritative policy making position and represent the official policy of the municipality. Therefore, "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926.

■ Supervisors Hoppe, McGuire, Perkins, and Hansman, as well as assistant director Orlando, are all non-policy makers as defined by Missouri law, and the instruction properly removed them from the jury's consideration. Although their actions could be considered by the jury in determining county custom, any improprieties on the part of these individuals could not be the basis of a finding of the county's official policy, for their actions were subject to significant review and were constrained by the county's written policies.

■ Mr. Pendergast and Ms. Ross Elving present a closer question. McGautha relies on *Angarita* for the proposition that liability is imputed to the county when the particular circumstances indicate that an individual's actions represent official municipal policy for the challenged action. *See* 981 F.2d at 1547. In *Angarita,* the police superintendent's unconstitutional acts resulted in liability for the county. Because the superintendent was considered a "final policymaker for the department," *id.,* the breadth of his authority and responsibility was "sufficient to impose liability on" the defendant county for actions taken in his official capacity. *Id.*

■ Instruction Number 8 fairly and accurately specified the official policy makers for Jackson County under Missouri law as the county legislature and county executive. McGautha's attempt to equate decision making discretion with policy making authority stretches *Angarita* too far. Authority as to specific personnel decisions does not necessarily rise to the level of final policy making authority. *See Praprotnik,* 485 U.S. at 128–30, 108 S.Ct. at 926–28; *Pembaur,* 475 U.S. at 481–84, 106 S.Ct. at 1299–1301.

Although Pendergast headed the collections department and was responsible for its day-to-day operations, neither he nor Ms. Ross Elving dictated final policy. They merely exercised their discretion in carrying out officially pronounced county policy. Their actions were reviewable by the county executive and the county's Merit System Commission, and were also subject to written county policy. Accordingly, neither Pendergast nor Ross Elving wielded policy making authority of the type seen in *Angarita,* and their actions are thus not imputable to the county under an official-policy standard. *See Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir.1994) (requiring "a decision by a final policymaker, not a 'principal' one").

#### b. Custom or Usage

■ Alternatively, liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2036 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 168, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). This standard serves to prevent municipal evasion of liabili-

ty through improper delegation of policy responsibility or acquiescence in pervasive constitutional violations by county employees. *See Praprotnik,* 485 U.S. at 126–27, 108 S.Ct. at 925–26. Liability for an unconstitutional custom or usage, however, cannot arise from a single act. *Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir.1991) ("a single deviation from a written, official policy does not prove a conflicting custom or usage"); *Williams–El v. Johnson,* 872 F.2d 224, 230 (8th Cir.), *cert. denied,* 493 U.S. 871, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989) (one occurrence of improper prison guard hiring contrary to official written policy "does not prove the existence of a" conflicting custom or usage).

■ McGautha argues that by excluding the seven named individuals from policy making status, the instruction impermissibly removed them from the jury's consideration of county custom or usage. We disagree, for the instruction adequately bifurcates the distinction between a determination of official policy and custom. The jury could have found a discriminatory custom sufficient to impose liability by considering the actions of the individuals that the court properly removed from the policy making ambit. Indeed, the instruction on custom states a legal standard of our own case law. *Jane Doe A,* 901 F.2d at 646.

### III. Refusal to Admit Arbitration Evidence

■ Although the district court considered evidence regarding an earlier arbitration hearing and ruling in resolving the Title VII claims, this evidence was excluded from consideration by the jury. Although the evidence may have been admissible, *see McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 292 n. 13, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984) (section 1983 claim); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974) (Title VII claim), the district court's determination that the evidence might inject collateral issues into the trial and confuse or mislead the jury is entitled to great deference. *Freidus v. First Nat'l Bank of Council Bluffs,* 928 F.2d 793,

795 (8th Cir.1991). The admission of evidence is committed to the sound discretion of the district court, *Alexander,* 415 U.S. at 60, 94 S.Ct. at 1025, and will not be disturbed in the absence of evidence of an abuse of discretion. *Dillon v. Nisson Motor Co., Ltd.,* 986 F.2d 263, 270 (8th Cir.1993). We conclude that no abuse of discretion occurred here.

The judgment is affirmed.