**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-3125

Robert Miller, III,         *
                                *

     Appellant,        *
                                *

   v.                 *
                                *

Pat Compton, individually and as        *
Deputy Prosecuting Attorney for Union     *
County, Arkansas; Caren Harp,         *
individually and as Deputy Prosecuting    *
Attorney for Union County, Arkansas,     *
                           * Appeal from the United States

     Defendants,       * District Court for the
                           * Western District of Arkansas.

Cathleen Compton, individually and as    *
agent for the Union County Prosecuting    *
Attorney; Lieutenant Byron Sartor,      *
individually and in his official capacity  *
as a Police Officer of the El Dorado     *
Police Department; Jackie R. Wiley, in    *
his official capacity as Chief of Police,  *
                                *

     Appellees,        *
                                *

Tom Wynne, Prosecuting Attorney for     *
the Thirteenth Judicial District,      *
                                *

     Defendant,       *
                                *


City of El Dorado,       *

```
                              *
        Appellee.            *
                  _____

           Submitted:  April 14, 1997
                            Filed: August 12,
1997
                  _____

Before LOKEN, JOHN R. GIBSON, and MAGILL, Circuit Judges.
                  _____

MAGILL, Circuit Judge.
```

Robert Miller III brought suit under 42 U.S.C. § 1983 against the city of El Dorado, Arkansas, El Dorado police officer Byron Sartor, El Dorado police chief Jackie Wiley, and private attorney Cathleen Compton for allegedly violating Miller's constitutional rights. The district court[1] granted the defendants' motions for summary judgment, and Miller now appeals. We affirm.

**I.**

Robert and Deneen Miller did not have an ideal relationship. The couple married in 1988 and had one child together. Miller and Deneen divorced in 1990, but had a second child out of wedlock in 1992. Miller initially refused to acknowledge his paternity of this second child.

Deneen has, at various times, accused Miller of physically assaulting her, including an episode when

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

Miller allegedly choked Deneen.  Miller denies that he ever

physically assaulted Deneen.  Despite her version of their history together, Deneen allowed Miller to move into her apartment when Deneen moved to El Dorado in June 1992.

During Thanksgiving of 1992, Deneen and Miller argued, and Miller threatened to move out of the apartment.  Deneen contacted the El Dorado police because she believed that Miller was going to remove appliances and furniture from the apartment.  Miller did not move out and did not remove anything from the apartment.  Within the next six weeks, Deneen and Miller continued to argue, and Deneen asked Miller to leave the apartment.

The El Dorado apartment, which was managed by Moore Realty and leased on a month-to-month basis, was originally leased in both Deneen's and Miller's names.  On January 8, 1993, Deneen spoke with the manager of the property and entered into a new lease in her name only.  Deneen took this action because she did not believe that Miller, who was then unemployed, was contributing sufficient financial support for the rent and household expenses.  Deneen did not tell Miller that his name was no longer on the lease.

On January 11, 1993, Deneen spoke with private attorney Cathleen Compton regarding Miller's failure to pay child support, Miller's failure to pay certain medical expenses, and Miller's unacknowledged paternity of Deneen's and Miller's second child.  Compton filed a paternity petition and a citation for contempt against Miller, but was unable to serve the petition or citation against him.  Subsequently, Miller acknowledged his

paternity of the second child, and Deneen instructed Compton to drop all actions against Miller.

During her January 11 meeting with Deneen, Compton learned that Deneen and Miller had a history of domestic violence. Deneen also told Compton that Deneen

wanted Miller to leave her home.  Compton recommended that Deneen contact the Union County Victim/Witness Assistance Program for help.

Deneen acted on this recommendation, and on January 11 spoke with Judy Hughes in the Victim/Witness Assistance Program.  Deneen told Hughes that Deneen and Miller were divorced, that Miller had been physically abusive and verbally abusive towards Deneen, that Miller was not listed on the apartment lease, and that Deneen wished Miller to leave the apartment.  Hughes called Moore Realty and confirmed that Miller was not listed on the apartment lease.  Hughes then contacted Captain Ellis of the El Dorado police, and explained that there was an unwanted person staying at Deneen's apartment, and that Deneen wanted the person removed.

Officers Blake and Stigall of the El Dorado police met Deneen at Deneen's apartment shortly before noon on January 11.  Deneen invited the officers into the apartment, and the officers spoke with Miller.  Miller showed the officers a lease which contained his name, and Officer Stigall spoke with someone from Moore Realty on the phone.  The Moore Realty representative explained that "at first she had told Ms. Miller that the lease could be changed over to her name only but after talking to someone else in the office that lease couldn't be changed over only into Ms. Miller's name."  Report by Officer Blake (Jan. 11, 1993) at 2, reprinted in Appellant's App. at 20.  The officers left the apartment, telling Deneen that they could not force Miller to leave. Officer Blake reported that Deneen and Miller "were agitated at each other," id., and that Deneen stated

-6-

"that she was afraid of Mr. Miller." Id. Deneen denies that she made this statement.

Deneen then spoke with Caren Harp at the Union County Prosecutor's office. Deneen repeated her allegations of abuse and showed Harp a copy of the apartment lease that listed only Deneen's name. Deneen was extremely upset and was crying during the meeting with Harp. Harp contacted Jim Moore of Moore Realty and confirmed that Miller was not on the current lease to the apartment. Harp also

contacted Compton to get additional background information on Deneen's and Miller's situation. Harp then contacted Captain Ellis of the El Dorado police and informed him that Miller was not on the current lease to the apartment.[2]

Captain Ellis sent El Dorado police officers Ward and Sartor to Deneen's apartment at 4:30 on the afternoon of January 11. Although Deneen was at the apartment complex, she did not enter the apartment with the officers. Miller invited the officers into the apartment. While Officer Sartor contends that he merely asked Miller to leave the apartment and Miller complied, Miller contends that Officer Sartor ordered him to leave. Miller alleges that Officer Sartor did not give him a chance to explain that Miller's name was listed on the lease, and that Officer Sartor threatened to arrest him if Miller did not leave. Miller left the apartment.[3]

Miller spent several days away from El Dorado. After three days, Deneen allowed Miller to return to the apartment. Deneen and Miller were remarried on July 3, 1993.

Miller brought this lawsuit on January 24, 1994, against several Union County prosecutors, Officer Sartor,

_____

[2]At approximately this same time, Miller was in the Union County Prosecutor's office completing a complaint against Deneen for giving a real estate agent false information. See Appellant's App. at 113-15 (Robert Miller Aff. for Criminal Summons). Miller contends that the Union County Prosecutor's office did not act on his complaint.

[3]Miller returned to the Union County Prosecutor's office and attempted to speak with a prosecutor. No prosecutor spoke with Miller, and he eventually left the office.

El Dorado police chief Jackie Wiley, the city of El Dorado, and Compton. In his suit, Miller sought relief for alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments under 42 U.S.C. §§ 1983, 1985, and 1988, as well as Arkansas state tort claims for false arrest, false imprisonment, seizure of pension, tortious interference with a contractual relationship, slander, invasion of privacy, public

disclosure of private facts, infliction of emotional distress, and unlawful ejection.  Miller did not bring suit against Deneen, and Deneen has not been joined as a party in this action.

During discovery, Compton sought admissions from Miller.  When Miller failed to respond to the request for admissions within the thirty-day time limit prescribed by Federal Rule of Civil Procedure 36, Compton moved the district court to deem the requested admissions admitted. The district court denied this motion, and set a later deadline for Miller to respond to the request for admissions.  Miller failed to meet this second deadline. Miller responded to the request for admissions several days after the expiration of the second deadline. Compton had also served Miller with interrogatories at the same time that she had requested admissions, and Miller never responded to the interrogatories.

Following discovery, the district court granted summary judgment to all defendants.  The district court held that the prosecutors were absolutely immune from Miller's civil rights claims against them. See Mem. Op. at 13, reprinted in Appellant's Add. at 14.  The district court dismissed Miller's civil rights complaint against Compton both because she was not a state actor, see id. at 11, reprinted in Appellant's Add. at 12, and because Miller, who failed to respond in a timely manner to Compton's request for admissions, was deemed to have admitted that he had no valid cause of action against Compton.  Id. at 11-12, reprinted in Appellant's Add. at 12-13.  Finally, the district court dismissed Miller's civil rights claims against Chief Wiley, Officer Sartor,

and the city of El Dorado.  The district court held that Officer Sartor was entitled to qualified immunity from Miller's suit, see id. at 14-15, reprinted in Appellant's Add. at 15-16, and that the city of El Dorado and Chief Wiley had not established an unconstitutional policy and could not be liable under a theory of respondeat superior.  See id. at 15, reprinted in Appellant's Add. at 16.

The district court held that Miller's claims in tort were barred either by Arkansas's one-year statute of limitations, see Mem. Op. at 15, reprinted in Appellant's Add. at 16 (citing Ark. Code Ann. 16-56-104), or by Miller's failure to allege sufficient facts to sustain these actions in tort. See id. at 15-18, reprinted in Appellant's Add. at 16-19.

Miller now appeals. During the pendency of this appeal, Miller dismissed the prosecutors from this action. Accordingly, we need only consider Miller's claims against Compton, Officer Sartor, Chief Wiley, and the city of El Dorado.

## II.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. McCormack v. Citibank, N.A., 100 F.3d 532, 537 (8th Cir. 1997). Summary judgment is proper where the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

In this case, the vast majority of Miller's claims are frivolous. Even on appeal, Miller does not clarify how his First or Fifth Amendment rights have been violated, and Miller was never seized in violation of the Fourth Amendment. Miller's state tort claims are either factually baseless, time-barred, or both. Accordingly, we summarily affirm the district court's grant of summary judgment to the defendants on these claims. See 8th Cir. R. 47B.

-12-

We conclude that the district court also properly granted summary judgment to the defendants on Miller's § 1983 claims for violations of the Fourteenth Amendment, although these claims warrant somewhat greater analysis.

A. Cathleen Compton.

Miller's § 1983 claim against Compton, a private attorney, arises from Compton's recommendation to Deneen that Deneen seek help from the Union County Victim/Witness Program, and Compton's subsequent conversation with Harp regarding Deneen and Miller. Based on this, Miller alleges that Compton conspired with Union County prosecutors to violate Miller's constitutional rights.[4]

Compton, a private actor, may be liable under § 1983 only if she "is a willing participant in joint action with the State or its agents." Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993) (quotations and citations omitted). In

> construing that test in terms of the allegations
> necessary to survive a motion to dismiss, this
> circuit has held that a plaintiff seeking to
> hold a private party liable under § 1983 must
> allege, at the very least, that there was a
> mutual understanding, or a meeting of the minds,
> between the private party and the state actor.
> In order to survive a motion for summary

---

[4]Miller, noting that Compton's sister-in-law Patricia Jackson Compton was a Union County deputy prosecutor, also argues that Compton used family and political ties to obtain action against Miller. Patricia Compton testified that on January 11, 1993, she was preparing for a capital murder trial and had no involvement in the Deneen-Miller affair beyond asking Judy Hughes to speak with another prosecutor about the matter. See Dep. of Patricia Jackson Compton (June 2, 1995) at 3-4, 30. Upon combing the record, we conclude that there is not a shred of evidence to support Miller's allegation that Compton used her relationship with Patricia Compton to further a plot against Miller.

judgment or for a directed verdict, evidence must be produced from which reasonable jurors could conclude that such an agreement was come to.

Id. (citations omitted).

In this case, there is no evidence that Compton had a "meeting of minds" with any government official that could have transformed Compton into a state actor. Compton's recommendation to Deneen that she seek legal assistance from a government agency certainly did not have this effect; the Supreme Court has rejected the argument "that a private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law." Lugar v. Edmonson Oil Co., 457 U.S. 922, 939 n.21 (1982) (quotations and citation omitted). When Compton spoke with Harp regarding Deneen's and Miller's situation, she did no more than provide information to a government agency. See Dep. of Caren Harp (June 2, 1995) at 7. To impose § 1983 liability on a private actor for merely answering a law enforcement official's questions regarding a case would have obvious and unfortunate consequences and has no support in precedent or common sense. Considering the record in the light most favorable to Miller, we conclude that Compton was not a state actor, and § 1983 liability could therefore not attach.[5]

B. Officer Sartor.

Miller contends that he had a Fourteenth Amendment property interest in remaining in his apartment, and that Officer Sartor should be liable for violating Miller's

---

[5]Because we affirm the district court's grant of summary judgment to Compton on the ground that Compton was not a state actor, we need not consider its alternative grant of summary judgment based on Miller's deemed admission that he had no valid cause of action against Compton.

right to due process by summarily depriving Miller of that interest.  We disagree.

In <u>Greiner v. City of Champlin</u>, 27 F.3d 1346 (8th Cir. 1994), we explained that the rationale for the qualified immunity doctrine

is to allow public officers to carry out their duties as they think right, rather than acting out of fear for their own personal fortunes. Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known that his actions violated clearly established law.

Id. at 1351 (citations omitted). Officer Sartor is therefore immune from Miller's suit unless, "first, the law he violated was clearly established at the time of the violation, and second, the applicability of the law to his particular action was evident." Id.

When Officer Sartor entered Deneen's apartment, he had information that: (1) Deneen was the only person on the current lease; (2) Deneen wished Miller to leave; and (3) Deneen had accused Miller of prior serious physical abuse. For purposes of this summary judgment motion, we must assume that Officer Sartor did not politely request that Miller leave Deneen's apartment, but rather that Office Sartor ordered Miller to leave under threat of arrest.

To the extent that Miller was merely a houseguest at Deneen's apartment, it is clear that Officer Sartor did not violate any of Miller's well-established rights by requesting Miller to leave the apartment. In Greiner, police officers encountered a loud party at a private home. The officers ordered houseguests, who had been invited to spend the night at the private home, to leave. See 27 F.3d at 1350. The houseguests brought suit against the officers, alleging that their rights were

-18-

violated when the police told them to leave.  Id. at 1352.  This Court disagreed, stating:

> We grant that police could not have interfered with the houseguest relation arbitrarily, without some valid governmental interest in doing so.  However, the facts do not fairly present that situation.  The record shows there were two complaints, that the police had already delivered a warning, that an outside party was going on around 2:00 a.m., and that it involved some level of noise (even granting a dispute about how much

noise). These facts give rise to some governmental interest in dispersing the crowd in order to restore order and quiet during hours most citizens devote to sleep. We emphatically do not consider how we would resolve the relative interests of the city and the guests on the merits, if that issue were before us. We do, however, hold that plaintiffs have not shown that it was clearly established on the night of their party that their rights were paramount over the governmental interest in dispersing them. Therefore, the defendants are entitled to qualified immunity on this claim.

Id. at 1352-53 (footnote omitted).

The facts presented in this case are far more compelling than those in Greiner, and demonstrate that Miller's interest in remaining in the apartment was far outweighed by "the governmental interest in dispersing" him. Id. at 1353. Here, Deneen, the sole holder of the current lease, wished Miller to leave. In addition, based on the alleged history of domestic violence between Deneen and Miller that had been recounted by Deneen, Officer Sartor had a reasonable concern for Deneen's safety if Miller were to stay in the apartment with her. See Dep. of Byron Sartor (June 2, 1995) at 8 (testifying that "in my past experience, 13 years, going on 14 years, you get a man and wife or girlfriend, or something like that, and they start fighting like that, there's always that great possibility that maybe someone could get hurt real badly; maybe even possibly killed").

Miller contends that he was not a mere houseguest, but rather that he was a cotenant. As a cotenant, or

-20-

even a hold-over tenant, Miller argues that he had the right to judicial process prior to his eviction. <u>See, e.g.</u>, <u>Williams v. City of Pine Bluff</u>, 683 S.W.2d 923, 924-26 (Ark. 1985) (holding that hold-over tenants are not trespassers under Arkansas law). Assuming that Miller is correct in his analysis, this does not answer whether Officer Sartor can be held liable for allegedly violating Miller's right to an eviction proceeding.

Under this Court's precedent, Officer Sartor can only be liable if "a reasonable person in his position would have known that his actions violated clearly established law" because "the applicability of the law to his particular action was evident." Grenier, 27 F.3d at 1351. In this case, Miller's status as a tenant was anything but "evident"; indeed, a reasonable person would almost certainly have perceived Miller as a mere houseguest. Deneen had presented a signed lease, dated only a few days earlier, which showed that she was the sole tenant. Moore Realty, while sending confused messages to the police, had ultimately confirmed that the lease presented by Deneen was valid. The Union County Prosecutor's office had investigated the matter, and concluded that Deneen was the sole legal tenant of the apartment. In light of Deneen's proof that she had the sole right to occupy the apartment, as well as the potential danger that Officer Sartor believed was presented by the threat of domestic violence, we conclude that a reasonable officer would not have known that asking Miller to leave the apartment violated well-established law. Accordingly, Officer Sartor is entitled to qualified immunity for Miller's claims.

## C. Chief Wiley and the City of El Dorado.

Finally, Miller contends that the district court erred in granting summary judgment to Chief Wiley and the city of El Dorado. We disagree.

"Municipal liability under 42 U.S.C. § 1983 arises if injury results from action pursuant to official municipal policy of some nature." McGautha v. Jackson County, Mo.

-22-

<u>Col. Dep't</u>, 36 F.3d 53, 55-56 (8th Cir. 1994) (quotations and citation omitted), <u>cert. denied</u>, 115 S. Ct. 2561 (1995).  This "liability for violating constitutional rights may arise from a single act of a policy maker . . . ."  <u>Id.</u> at 56.  However, "that act must come from one in an authoritative policy making position and represent the official policy of the municipality."  <u>Id.</u>

Under Arkansas law it is the police chief of a municipality who is given authority to suppress breaches of the peace, an arguably policy-making position. See Ark. Code Ann. § 14-52-202(c). Under Arkansas Code § 14-52-202(b)(1), the police chief may appoint deputies, and the police chief is responsible for the acts of the deputies. See Ark. Code Ann. § 14-52-202(b)(1). In this case, Chief Wiley appointed Captain Ellis. Captain Ellis dispatched Officer Sartor to Deneen's apartment, and Officer Sartor asked Miller to leave his apartment under orders from Captain Ellis. Because Chief Wiley is statutorily responsible for Captain Ellis's decisions, Miller argues that Captain Ellis's orders to Officer Sartor should be imputed to Chief Wiley. Because Chief Wiley is therefore ultimately responsible for Officer Sartor's alleged constitutional violation, Miller argues that the city of El Dorado should be liable for the policy decision to ask Miller to leave his apartment.

Miller's argument is simply that a superior should be made liable for a subordinate's decision. Although clothed in Arkansas statutory terms, this is no more than an attempt to impose liability under a theory of respondeat superior. This theory of recovery is precluded under § 1983. See Canton v. Harris, 489 U.S. 378, 385 (1989) ("Respondeat Superior or vicarious liability will not attach under § 1983."). Accordingly, we affirm the district court's grant of summary judgment to Chief Wiley and the city of El Dorado.

For the foregoing reasons, we affirm the judgment of the district court.[6]

---

[6]Miller has also moved to supplement the record on appeal with the full text of his deposition and with the policies of the El Dorado police department. These documents were not before the district court, and the defendants have objected to their admission on appeal. Miller's only explanation for not presenting them to the district court is his first retained counsel's incompetence, which we conclude does not justify the late admission of documents not before the district court. Accordingly, Miller's motion is denied.

-25-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.