**SOLOMON TEMPLE M.B. CHURCH, Plaintiff,**

v.

**CITY OF ST. LOUIS, et al., Defendant.**

**No. 4:94CV2419SNL.**

United States District Court, E.D. Missouri, Eastern Division.

Oct. 16, 1997.

Eric E. Vickers, Vickers and Associates, University City, MO, for Solomon Temple M.B. Church.

David M. Zevan, Tolin and Zevan, St. Louis, MO, for Sharon Tyus.

Kingsway Neighborhood Housing Corp., St. Louis, MO, pro se.

**MEMORANDUM**

LIMBAUGH, District Judge.

Plaintiff has filed this § 1983 action[1] alleging that it was prohibited from purchasing additional real property, upon which to build a parking lot, in violation of certain alleged constitutional rights. This matter is before the Court on defendant City of St. Louis' motion for summary judgment on Count I (the only count directed against the City) of the plaintiff's complaint (# 47), filed August 21, 1997. Responsive pleadings have been filed. This cause of action is set for trial on the Court's December 1, 1997 trial docket.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant,* 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that

1. In plaintiff's complaint, it appears to allege a § 1983 claim, a § 1985 conspiracy claim, and a vague § 1983 conspiracy claim against defendants Land Reutilization Authority (LRA), St. Louis Development Corporation (SLDC), and the City of St. Louis. See, Complaint, paragraph # 17. However, in light of the fact that it volun-tarily dismissed out defendants LRA and SLDC, and in its response to the City's summary judgment motion, only argues municipal liability under § 1983, the Court determines that the plaintiff has abandoned all of its conspiracy claims, whether under § 1983 or § 1985, against defendant City of St. Louis.

there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable· to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

Plaintiff Solomon Temple M.B. Church is a church located in the City of St. Louis. In order to accommodate its expanding membership, plaintiff alleges that it entered into a contract in August 1992 to build a new church on the grounds of its present church. Plaintiff alleges that its application for a building permit was rejected by the City in December 1992. According to the plaintiff, the City advised it that a permit would issue only if the plaintiff agreed to construct a parking lot to accommodate the additional parishioners attending the new church.

To satisfy the City's condition, plaintiff entered into a contract with the Land Reutilization Authority (LRA) and the St. Louis Development Corporation (SLDC) to purchase lots located in the rear of the church for use as a church parking lot. The LRA is a public corporation established by state statute to acquire and resell real property in the City of St. Louis on which real estate taxes are delinquent and owing. §§ 92.700–.920 R.S.Mo. (1994). The SLDC is also a statuto-ry public corporation providing administrative services for the LRA. §§ 349.010 *et seq.* R.S.Mo. (1994). Both are entities existing separate and apart from defendant City of St. Louis.

The LRA conditioned the sale of the subject properties upon plaintiff obtaining the written endorsements of the owners located on each side of the church building. Plaintiff obtained these endorsements.

In November 1993 plaintiff was informed by the LRA and the SLDC that the purchase contract for the rear lots was cancelled because the plaintiff had failed to obtain the endorsement of defendant Sharon Tyus, the alderperson for the ward in which the lots are located. The LRA has a custom of requesting such an endorsement when the proposed use for the real property will require some action by the Board of Aldermen prior to the sale, such as a zoning variance. Affidavit of Michele Duffe, SLDC's Director of Real Estate.

After the contract with the LRA and the SLDC fell through, defendant Kingsway [2] submitted an offer to purchase the subject lots. Plaintiff alleges that the President of defendant Kingway is Sterling Miller, spouse of defendant Sharon Tyus. The sale to Kingsway did not go through either, and the LRA eventually sold the lots to plaintiff, despite plaintiff's failure to obtain defendant Tyus' endorsement.

In Count I of its complaint, plaintiff alleges that defendant City, through the acts of defendant Tyus, deprived plaintiff of its right to purchase certain property for use as a parking lot for its proposed new church building. Plaintiff asserts that the City's action deprived plaintiff of its due process rights under the Fifth and Fourteenth Amendments and its right of religious freedom under the First Amendment.

---

**2.** On March 7, 1996 Judge Catherine D. Perry (before whom this case was then pending) entered default as to defendant Kingsway. On April 26, 1996, following a hearing, Judge Perry entered a default judgment in the amount of $65,855.00 plus interest against defendant Kingsway. On June 13, 1996 defendant Kingsway filed a Notice of Bankruptcy in this case. The case was subsequently stayed. On June 20, 1997 the stay was lifted. On September 30, 1996 defendant Kingsway's bankruptcy was closed. What the final disposition of the bankruptcy estate was at the time of its closing is unknown to this Court. Furthermore, the Court has no knowledge of whatever efforts plaintiff has made in enforcing the default judgment entered by Judge Perry.

Plaintiff contends that the City is liable under § 1983 because it maintained and encouraged the LRA's custom of refusing to sell any of its property unless the purchaser first obtained the endorsement of the alderperson of the ward where the property is located. It further contends that defendant Tyus, as an alderperson, was a "policymaker" for defendant City. Defendant City seeks summary judgment primarily for two reasons: 1) the "custom or policy" of obtaining the endorsement of the alderperson whose ward the subject property to be sold is located is not a municipal policy or custom; and 2) defendant Tyus' actions cannot be attributed to the City because she alone does not constitute a "final policymaking authority" for defendant City, especially in matters regarding the sale of real estate owned by the LRA.

■ Liability under § 1983 for a governmental entity must be based upon a municipal custom or policy, either official or unofficial, that causes the alleged constitutional deprivation. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978); *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 684 (8th Cir.1995); *McGautha v. Jackson County, Mo. Collections Department*, 36 F.3d 53, 55 (8th Cir.1994). In order to establish § 1983 liability against a municipality, a plaintiff must show that the municipal policy or custom was the "moving force" behind the alleged constitutional violation. *Marti*, at 684 *citing Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. Municipalities cannot be held liable under § 1983 pursuant to a *respondeat superior* theory of liability. Thus, municipal liability is limited to conduct for which the municipality is itself actually responsible. *McGautha*, at 56 citing *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *Monell*, 436 U.S. at 691–92, 98 S.Ct. at 2036–37. Designation of the official or body responsible for the challenged policy is a matter of state law determined by the court. *McGautha*, at 56 *citing Jett*, 491 U.S. at 737, 109 S.Ct. at 2724; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

■ Section 1983 municipal liability may be grounded on the single act of a policy maker, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84, 106 S.Ct. 1292, 1299–1301, 89 L.Ed.2d 452 (1986); *McGautha*, at 56, however, that act must come from a person in an authoritative policy-making position and represent the official policy of the municipality. *McGautha*, at 56; *see Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926.

■ Plaintiff contends that the City is liable under § 1983 because it maintained and encouraged the policy or custom of the LRA requiring endorsement of the alderpersons of the ward for prospective purchasers of LRA-owned properties. Plaintiff's Response to City's Motion for Summary Judgment (# 49), pg. 5. Plaintiff further claims that defendant Tyus' decision to withhold her endorsement was an act by a policymaker in furtherance of an "agreement" between the LRA and the City to promote the LRA's policy regarding aldermanic endorsement. Plaintiff's claim fails for several reasons.

Firstly, the custom or policy at issue is clearly the LRA's policy, not a municipal policy. Plaintiff totally fails to refute Ms. Duffe's affidavit that the LRA, and not the City, has a custom or policy of requesting prospective purchasers of LRA-owned property, which will require a use variance, to seek the endorsement of the alderperson whose ward the property is located within. Plaintiff is seeking to predicate the City's liability on a custom that was not the City's custom, but that of the LRA, an entity entirely separate from the City. The Court cannot hold the City liable for a custom not of its own invention.

Plaintiff attempts to circumvent this fact by asserting that the City should be held liable because it sanctions the LRA's aldermanic endorsement policy. Plaintiff offers no caselaw to support this proposition. Its only evidence is the deposition of its own contractor, William C. Whittington. The Court has reviewed the entire submitted portion of Mr. Whittington's deposition and finds no support for the plaintiff's proposition of some type of "behind closed doors" agreement between the LRA and the City. All

Mr. Whittington offers is his own personal opinion of what he believes is necessary "to do business in the city". Notwithstanding Mr. Whittington's personal opinion, plaintiff offers no reliable evidence to suggest that the City adopted the LRA's custom or policy for its own benefit, or that the City had actual or constructive notice that the LRA's custom or policy of aldermanic endorsement was being routinely abused by the alderpersons for their own personal gain.

Secondly, the LRA alone makes the decision as to whether it will sell LRA-owned real estate to a prospective purchaser. Plaintiff has offered absolutely no evidence that the City, either through its own municipal custom or policy, involves itself in the LRA's decision to sell LRA-owned property. Plaintiff's argument that defendant Tyus is a policymaker who carries out the legislative powers of the City not only lacks merit but is factually incorrect.

It is well-established that one of the necessary elements to establishing § 1983 municipal liability is that only those municipal officials who have "final policymaking authority" may by their actions subject the municipality to § 1983 liability. *Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924 *citing Pembaur*, 475 U.S. at 480–83, 106 S.Ct. at 1298–1300.

The Charter of the City of St. Louis, Art. IV, § 1 provides in pertinent part:

"The legislative power of the City of St. Louis shall, subject to the limitations of this charter, be vested in a **board of aldermen** consisting of a president, elected as such by general ticket from the city at large, and twenty-eight members, one from each ward, to be elected only by the qualified voters of the ward he is a candidate to represent, and to be known as alderman from the ward from which elected." (emphasis added).

It is clear under the City's Charter that legislative powers are vested not in the individual alderperson, but rather in the Board of Aldermen, and that no alderperson alone has the power to enact legislation binding upon the City. Art. IV, § 16 provides in pertinent part:

"Every bill shall be read on three different days in open session before its adoption, and no bill shall become an ordinance unless **a majority of all the members** vote in favor of its adoption and the presiding officer signs the same in open session." (emphasis added).

Furthermore, under the City's Charter, the Mayor has veto power of any bill adopted by the Board of Aldermen, and if the Mayor so chooses to veto a bill adopted by the Board, the Board can only pass the bill (and it becomes a city ordinance) upon a vote of approval by two-thirds of the members of the Board. Art. IV, § 17.

Finally, Art. IV, § 26 provides in pertinent part:

"The board of aldermen shall not have power.. to sell **any of the city's real estate except by ordinance adopted by a vote of two-thirds of all the members; nor acquire real estate by private purchase except by ordinance recommended by the board of public service.**"

Under the Charter of the City of St. Louis, it is clear that defendant Tyus, as a single alderperson, has no "final policymaking authority" especially as regards the sale of City real property. She simply has no responsibility, as a single alderperson, for making policy on behalf of the City. As a matter of law, liability cannot be imputed to the City for defendant Tyus' alleged actions because she does not possess "final policy-making authority" and her alleged actions do not represent official municipal policy for the challenged actions.

The Court finds that no material issues of fact exist in dispute regarding the fact that the challenged policy or custom is not a municipal policy or custom, and that defendant Tyus' alleged actions are not the actions of a municipal official with "final policy-making authority" in connection with the sale of city real estate, especially real estate owned by the LRA. Defendant City of St. Louis is entitled to summary judgment as a matter of law.