The Honorable Janet Johnson State Representative 600 Mills Park Road Bryant, AR 72022-3123
Dear Representative Johnson:
I am writing in response to your request for my opinion on certain issues related to the question of who has authority to discipline or terminate a deputy district court clerk. It appears that your inquiry pertains to the Bryant department of the Saline County District Court.[1] Your specific questions are as follows:
 According to A.C.A. § 16-17-106, the district judge may appoint deputy clerks with the approval of the governing body of the city. However, the statutes appear to be silent on the issue of who has the authority to discipline or fire a deputy court clerk. If the deputy court clerks are city employees who are subject to the city handbook and rules and regulations, does the mayor or the district judge have the final authority on discipline and termination issues? If the district judge has this authority, is the city liable for any unconstitutional acts of the district judge in the termination process, even if the district judge acts unilaterally? (For example, if the district judge terminates a deputy court clerk for unconstitutional reasons without approval of the mayor, does the city have any liability for the district judge's actions?)
RESPONSE
I must initially note that I find your questions concerning the "city handbook and rules and regulations" and "final authority" on employment decisions somewhat ambiguous. Specifically, I am not entirely certain as a preliminary matter if you are asking whether the city could, under state law, make the deputy district court clerks subject to the handbook and regulations. As discussed below, the Bryant City Council in my opinion is empowered under state law to establish employment policies respecting deputy district court clerks for the Bryant department of the Saline County District Court. However, it is not entirely clear from the phrasing of your questions whether the council has in fact done so. I have not seen the handbook and regulations, but will note that if they are silent on this point, the issue in my opinion turns on the city council's intent with respect to its employment policies because it is not axiomatic under state law that deputy district court clerks are covered by city regulations that apply to "city employees." As my predecessors and I have noted on many occasions, moreover, this office is not well situated to decide factual issues or to construe local ordinances. See Op. Att'y Gen. 2005-278 (and opinions cited therein).
Similarly, regarding the "final authority" of the district court judge or mayor on discipline and termination issues concerning deputy district court clerks, the fact that a city has adopted employment regulations for "city employees" in my opinion does not establish the mayor as a decision-maker in connection with these employees. The clerks are not hired or supervised by the mayor. Instead, as discussed below, state law vests the judge with the power to appoint, i.e., hire, deputy district court clerks, subject to city council approval; and this likely includes discipline or termination authority. While I believe this approval authority of the council belies any assertion that the judge has the right to autonomous decision making in employment matters, it nevertheless seems clear that the mayor
does not have final authority under state law on discipline and termination issues concerning deputy district court clerks.
With regard to your second question, I cannot answer the factual question of whether the city would be liable for the unconstitutional employment actions of the district court judge. I can only discuss the general guiding principles in such a case. As discussed below, the answer may depend upon whether the judge was the sole policymaker, although myriad factual issues may bear on the question.
Question 1 — If the deputy court clerks are city employees whoare subject to the city handbook and rules and regulations, doesthe mayor or the district judge have the final authority ondiscipline and termination issues?
Not having seen the city handbook or regulations, I must first question the possible assumption that deputy district court clerks are necessarily subject to city employment regulations that apply to "city employees." State law clearly vests the district court judge with some authority in appointing, controlling and directing the work of the clerks. Cf. Op. Att'y Gen. 2001-202 (noting the former municipal judge's authority to appoint the municipal court clerks and direct their work). This in turn leads me to suspect that an initial fact question may arise concerning the application of the City of Bryant's handbook and regulations to the deputy district court clerks for the Bryant department of the Saline County District Court. I cannot decide an issue of that nature.
I will nevertheless note that in my opinion the City Council may establish employment policies respecting the clerks. This authority derives, in my opinion, from the state law authorizing it to direct "municipal affairs," which are defined as "all matters and affairs of government germane to, affecting, or concerning the municipality or its government," except certain matters that are state affairs. A.C.A. § 14-43-601 (Repl. 1998).See also A.C.A. § 14-43-602 (Repl. 1998) (authorizing a city to "perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs. . . ."). The matter of establishing employment policies for deputy district court clerks has not been designated a "state affair" under A.C.A. § 14-43-601. Nor is it specifically addressed elsewhere in the Arkansas Code. In my opinion, this leaves the field open for regulation by the City Council, considering that the district court judge's appointment of deputy clerks is subject to city council approval in accordance with A.C.A. § 16-17-106, which provides:
 (a) The judge of the municipal court of any city in this state may, with the approval of the governing body of the city, appoint one (1) or more deputy clerks to serve under the supervision of the municipal court clerk.
 (b) The salary of the deputy clerk or clerks may be less than, but not more than, the salary paid to the municipal court clerk. The salary designated for the office of municipal court clerk may be apportioned by the city council between and among the municipal court clerks and any or all of the deputies.
 (c) Deputy municipal court clerks are empowered to perform all duties and exercise all powers granted to the municipal court clerk and shall post bond in the same manner and amount as required of the municipal court clerk.
A.C.A. § 16-17-106 (Repl. 1999) (emphasis added).
I also find it significant that the city bears sole responsibility for the salaries of deputy district court clerks.See generally Ops. Att'y Gen. 1999-207 and 88-011 (opining that the city sets the salary of the clerks, with no contribution by the county, where state law does not specify otherwise). Although these factors do not conclusively establish deputy district court clerks as employees of the city for all purposes, I believe they support the general proposition that having employment policies for the deputy clerks is of sufficient concern to the city that it constitutes a "municipal affair." I also note that it appears the law concerning the employment of district court personnel has not changed with the adoption of Amendment 80 to the Arkansas Constitution, which revised the judicial article of the constitution, in part to making the "district court" the "unified limited jurisdiction court in Arkansas." In Re. Implementationof Amendment 80: Amendments to Rules of Civil Procedure andInferior Court Rules, Addition to Reporter's Notes, Rule 1 (May 24, 2001); Ark. Const. amend. 80, §§ 7(A) and 19(B)(2) and (C). Amendment 80 does not address the employment of district court personnel; and the state law that governs the appointment of deputy district court clerks has not changed. Accord Op. Att'y Gen. 2005-191 (noting that "[a]lthough [A.C.A. §§ 16-17-106,supra] has not been amended to reflect the change from municipal to district court . . ., it has not been repealed and . . . remains effective to authorize the appointment of deputy district court clerks.").
I therefore recognize the possibility that the city has made the clerks subject to its employee handbook and regulations. This fact alone does not, however, establish the mayor as a decision-maker in connection with these employees. I have found no provision of state law suggesting that the mayor has control over deputy district court clerks. Compare A.C.A. §§14-42-110(a)(1) (Repl. 1998) (giving mayors the "power to appoint and remove all department heads" subject to override by a 2/3 vote of the city council) and 14-43-504(b)(1) (providing that the mayor shall "[s]upervise the conduct of all the officers of the city. . . .") To the contrary, state law vests the district court judge with the power to appoint the clerks, subject to city council approval. A.C.A. § 16-17-106, supra. This appointive power probably includes the power of removal. See generallyHorton v. Taylor, 585 F.Supp. 224 (W.D. Ark. 1984) (regarding the county judge's right to hire, "and naturally the concomitant duty to fire, his employees. . . ."), rev'd. on other grounds,767 F.2d 471 (8th Cir. 1985). It also seems clear that the judge, through the district court clerk, has supervisory authority over the deputy clerks. The deputy clerks are supervised by the clerk, who in turn is appointed and, it reasonably follows, supervised by the judge. See A.C.A. §§16-17-106, supra (deputy clerks) and -211 (Supp. 2005) (the district court clerk).
Accordingly, the answer to the question of authority as between the district court judge and the mayor under state law is clear, in my opinion. It is the judge, and not the mayor, who has discretion under state law to supervise the deputy district clerks and make hiring decisions, subject to approval of the city council, as well as firing decisions, possibly subject to city employment regulations, as discussed above.
Question 2 — If the district judge has this authority, is thecity liable for any unconstitutional acts of the district judgein the termination process, even if the district judge actsunilaterally? (For example, if the district judge terminates adeputy court clerk for unconstitutional reasons without approvalof the mayor, does the city have any liability for the districtjudge's actions?)
I cannot speculate regarding the city's liability for any unconstitutional acts of the district court judge, due to the intensely factual nature of such issues. I can only discuss the general guiding principles when considering potential municipal liability under 42 U.S.C. § 1983, which provides redress for the deprivation of a federal statutory or constitutional right under color of law. Section 1983 provides in pertinent part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
Municipalities are "persons" within the meaning of § 1983; but to find a municipality liable under this law, a plaintiff must identify a municipal policy or custom that caused the constitutional injury. Monell v. Dept. of Social Services ofCity of New York, 436 U.S. 658, 694 (1978). Additionally, as the Eighth Circuit Court of Appeals has observed, "[i]t is well-settled that the doctrine of respondeat superior does not apply under § 1983, [citing Monell, supra], and that `[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" Ware v. Jackson County,150 F.3d 873, 885 (8th Cir. 1998), quoting Pembaur v. City ofCincinnati, 475 U.S. 469, 481 (1986). The Eighth Circuit inWare emphasized that "`the authority to make municipal policy is necessarily the authority to make final policy.'"150 F.3d at 885 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127
(1988)). This authority may exist by virtue of a direct legislative grant or it may be delegated by the person possessing such authority. Pembaur, supra, at 483. Policymaking officials are to be identified by reference to state law, taking into account local ordinances or regulations. Jett v. Dallas Indep.School Dist., 491 U.S. 701, 737 (1989).
The following statement by the Eighth Circuit offers further insight into the so-called "official policy" theory of municipal liability under § 1983:
 Although municipal liability for violating constitutional rights may arise from a single act of a policy maker, [internal citations omitted], that act must come from one in an authoritative policy making position and represent the official policy of the municipality. Therefore, `[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.'
McGautha v. Jackson County, Mo. Col. Dep't, 36 F.3d 53, 56 (8th Cir. 1994), quoting Praprotnik, supra, 485 U.S. at 127. Seealso Ware v. Jackson County, supra, 150 F.3d at 885 (quoting thePraprotnik court's further statement that "[s]imilarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies.")
The Eighth Circuit in Ware, supra, went on to restate thePraprotnik court's formulation as follows:
 Stated differently, where the right to review a decision is retained, there has been an incomplete delegation of authority, and municipal liability may not attach; on the other hand, an absolute delegation of authority may implicate the municipality. Williams v. Butler, 863 F.2d 1398, 1402 (8th Cir. 1988) (noting "fine line" between delegating final policymaking authority and entrusting discretionary authority to official).
150 F.3d at 885-86.
These precedents make clear that discretionary authority to hire or promote employees does not alone give rise to municipal liability, even though the decision maker may have a final power to make such decisions. Accord Gillette v. Delmore,979 F.2d 1342, 1350 (9th Cir. 1992) (noting that "the discretionary authority to hire and fire employees . . . is not sufficient to establish a basis for municipal liability [under § 1983].") As stated by the Supreme Court in Pembaur, supra, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered [footnote omitted]. The fact that a particular official — even a policymaking official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." 475 U.S. at 481-82. To further illustrate the point, in a footnote in Pembaur, the court observed:
 T]he County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would
give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.
Id. at 483, n. 12 (emphasis original).
Having reviewed state law in light of these precedents, bearing in mind that whether an official possesses final policymaking in a given area is a question of state law, it is my conclusion that the city council is the authorized policymaker in matters of personnel administration with respect to deputy district court clerks. The district judge clearly has hiring and firing authority pursuant to A.C.A. § 16-17-106. But in my opinion, this does not establish the judge as the final policymaker on employment matters. Rather, I view this as discretionary authority that may be constrained by city policy, established pursuant to the city council's power over its municipal affairs.See n. 2, supra. Cf. Williams v. Butler, 863 F.2d 1398, 1403
(8th Cir. 1988) (finding the City of Little Rock liable for the former Little Rock municipal judge's unconstitutional discharge of municipal court clerks where the judge had "sole authority" to discharge the clerks and determine their working conditions, the clerks having been exempted from the city's employment policies, with all authority delegated to the judge by the city).
Accordingly, unless the city council has delegated to the judge sole responsibility for establishing final employment policy with respect to the discipline of deputy district court clerks, it seems unlikely that the unconstitutional exercise of the judge's discretion in firing a clerk would give rise to municipal liability under § 1983. Of course, the question ultimately is a factual one that I cannot definitively resolve in the abstract. Only a court acquainted with all the facts in the particular case can determine the matter. The foregoing will hopefully be of assistance in resolving the city's concerns. I suggest, however, that the city consult local counsel who is best positioned to render advice based on a full understanding of the underlying facts.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Saline County has one district court with two departments — one located in Benton and the other in Bryant. A.C.A. §16-17-918(a) (Supp. 2005). Each department has one judge. Id.
The judges of the Saline County District Court are elected countywide. Id. at (b). A salary range for the Bryant Department Judge is set under A.C.A. § 16-17-108(97) (establishing a range of $50,000 to $90,000), which is part of the comprehensive salary act for district court personnel. This act does not address the employment or salaries of deputy clerks of the Saline County District Court.