810 F.2d 164
 124 L.R.R.M. (BNA) 2513, 55 USLW 2455,
37 Ed. Law Rep. 469
 MISSOURI NATIONAL EDUCATION ASSOCIATION, a Missouri Not for
Profit Corporation and Jo Alexander, Lynn Byra Bahr, Jerry
Bailey, Virginia Nace, Vicki T. Nelms, Sharon Porter, Arvil
Skinner, Gail Schmelzer, Donald R. Stephens, Nancy Whatley,
and Mary Jane Wilson, Appellants,
v.
NEW MADRID COUNTY R-1 ENLARGED SCHOOL DISTRICT, a Public
Corporation, and Ray Melton, in His Official
Capacity as Superintendent of the New
Madrid County R-1 School
District, Appellees.
 No. 85-1430.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1986.
Decided Jan. 22, 1987.
Rehearing Denied Feb. 18, 1987.
 
 Bruce R. Lerner, Washington, D.C., for appellants.
 Hal E. Hunter, Jr., New Madrid, Mo., for New Madrid County.
 James E. Spain, Poplar Bluff, Mo., for Melton.
 Before HEANEY, ARNOLD and WOLLMAN, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 The appellants, nine public school teachers, are members of the New Madrid National Education Association (New Madrid NEA) and the local chapter of the Missouri National Education Association (Missouri NEA). They brought this action under 42 U.S.C. § 1983, claiming that the appellees, New Madrid County R-1 Enlarged School District (School District) and Superintendent Ray Melton, denied renewal of teaching contracts of the nontenured appellants and that the appellees made involuntary reassignments of tenured appellants in retaliation for the appellants' exercise of first amendment rights of free speech and association in joining the NEA. The case was tried to a jury. After a lengthy trial, it returned a verdict in favor of two of the appellants, Jo Alexander and Arvil Skinner, but awarded them no damages. The jury found against the other seven appellants. Alexander, Skinner and the Missouri NEA moved for declaratory and injunctive relief. The district court granted it to Alexander and Skinner but denied it to the Missouri NEA.
 
 
 2
 This appeal is taken from judgments and orders of the United States District Court for the Eastern District of Missouri, denying plaintiffs' motion for a new trial and motions for declaratory and injunctive relief. 606 F.Supp. 25.
 
 
 3
 I. FACTS.
 
 
 4
 Teachers and administrators of the School District had traditionally been represented by the Community Teachers Association (CTA) and the affiliated Missouri State Teachers Association (MSTA). The School District had granted various organizational privileges to CTA, including dues checkoff, use of school mailboxes and rooms and paid trips to MSTA conventions. A number of teachers, however, became dissatisfied with the CTA and, in 1981, formed the New Madrid NEA, affiliated with the Missouri NEA. When the New Madrid NEA requested the School District to grant it the organizational privileges enjoyed by the CTA, its request was denied. The school administrators then embarked on a campaign to discourage the organizing efforts of and membership in the New Madrid NEA.
 
 
 5
 In 1982, the School District, faced with declining enrollment, decided to deny new contracts to seven probationary teachers (probationary teachers are those who have worked five years or less) and to transfer a number of tenured teachers to other positions. The seven probationary teachers without new contracts included the only four probationary teachers who were associated with the New Madrid NEA. The transferred tenured teachers included five New Madrid NEA members. The record does not reveal how many tenured NEA members did not get transferred.
 
 
 6
 II. ISSUES ON APPEAL.
 
 
 7
 The following issues are raised on appeal: (1) Did the district court wrongfully deny the appellants access to certain personnel files? (2) did the district court improperly exclude evidence submitted by the appellants to show anti-NEA animus? (3) Did the district court improperly refuse to give a requested jury instruction? (4) Did the district court improperly deny injunctive and declaratory relief to the Missouri NEA?III. DISCUSSION.
 
 
 8
 A. Personnel Files.
 
 
 9
 At trial, after an in camera inspection, the district court denied the appellants limited access to the personnel files of the forty-five probationary teachers who had been granted new contracts and who were certified to teach the same subjects as the appellants. It also denied access to the files of the two probationary teachers who had been laid off but who had not been New Madrid NEA members. In our view, the denials were improper.
 
 
 10
 The district court based its decision on its observation that the requested personnel files contained no relevant information, specifically information on whether a teacher belonged to one of the teacher organizations. While the court correctly observed that evidence of teacher affiliation was not in the personnel files, it erred in holding that the personnel files contained no relevant evidence. The files contained the evaluations of each teacher by his or her superiors. This evidence was relevant to rebut the appellees' evidence that the appellants were terminated because they had worse teacher records than the other probationary teachers who were retained. Had the appellants been given access to these files, they could have attempted to use them to prove that the reasons advanced by the appellees for their actions against the appellants were pretextual. Confidential information of little relevance, e.g., medical records, could easily have been protected. Moreover, the appellants consistently expressed willingness to limit the scope of their discovery.
 
 
 11
 B. Exclusion of Evidence.
 
 
 12
 The district court issued a series of evidentiary rulings that kept a number of exhibits and witnesses from the jury. The appellants are especially concerned with the exclusion of the testimony by Paul Telker, the Missouri NEA staff representative, with respect to the School District's negative reaction to the New Madrid NEA. Other witnesses were also denied the opportunity to testify with respect to the School District's hostility to the New Madrid NEA.
 
 
 13
 The district court excluded this evidence on the theory that only direct statements by school administrators threatening retaliation against the appellants for the exercise of their first amendment rights were probative. It cited Smith v. Arkansas State Highway Employees, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979), in support of its ruling.
 
 
 14
 In Smith v. Arkansas State Highway Employees, the Supreme Court simply held that the first amendment does not impose an affirmative obligation on a state governmental agency to listen, to respond, or to recognize a labor organization and to bargain with it. Smith did not hold that a public employer can retaliate against public employees who exercise their right to belong to a particular labor union. To the contrary, it held:
 
 
 15
 The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances. And it protects the rights of associations to engage in advocacy on behalf of their members. * * * The government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy * * * or by imposing sanctions for the expression of particular views it opposes * * *.
 
 
 16
 441 U.S. at 464, 99 S.Ct. at 1827 (citations omitted).
 
 
 17
 Moreover, Smith does not hold that the statements of administrators of a governmental agency expressing an animus toward a particular labor organization are inadmissible to show that acts which may or may not be retaliatory acts were committed with the intent to discriminate against employees for union membership or activities.
 
 
 18
 School officials are free to express their views on unions and to urge teachers to join or not to join a union. As long as they refrain from threats or promises, their speech is protected under the first amendment. But if they terminate or otherwise discriminate against employees who act against their wishes, they violate the right of teachers to associate with the union of their choice. In most cases, a dispute will arise as to why an employee was terminated. Was it in retaliation for union activities or for a legitimate reason? In such cases, anti-union animus is one fact among others that can be considered in the search for the truth as to the employer's intent. See NLRB v. Walmart Stores, Inc., 488 F.2d 114, 117 (8th Cir.1973); NLRB v. Superior Sales, Inc., 366 F.2d 229, 233 (8th Cir.1966). We are unable to tell from this record whether the specific instances cited by the appellants are relevant under this standard and, if so, whether a proper foundation was laid for the admission of the evidence. These determinations can be made by the trial court on remand.
 
 
 19
 C. Jury Instructions.
 
 
 20
 The appellants requested the district court to give the following instructions:
 
 
 21
 Plaintiff is not required to produce direct proof of unlawful motive, intent, or design. A motive, intent, or design to violate a person's constitutional rights, if it exists, is seldom admitted and may be inferred from the existence of other facts.
 
 
 22
 The court refused to give the instruction because the court considered it to duplicate a general jury instruction, explaining that "the law makes no distinction between direct and circumstantial evidence." In our view, it was not duplicative and would have aided the jury in understanding the case. While the failure to give the instruction would not in and of itself be a basis for reversal, it, or a similar instruction, would be appropriate on retrial.
 
 
 23
 D. Denial of Relief to the NEA.
 
 
 24
 In addition to ordering the School District to restore Alexander and Skinner to their previous positions, the district court ordered the School District to grant equal privileges to the CTA and the Missouri NEA. Although it enjoined the intimidation and harassment of Alexander and Skinner, it did not enjoin such treatment of others, under the theory that the jury had found against the other seven appellants and that the Missouri NEA had no independent rights.
 
 
 25
 The district court found no abridgement of the Missouri NEA's first amendment rights, as there is no "affirmative obligation on the government to listen, to respond, or in this context, to recognize the [labor] association and bargain with it." It stated that "while the rights of the individual teachers must be protected, the Court finds no independent rights that can properly be asserted by plaintiff Missouri NEA."
 
 
 26
 In Allee v. Medrano, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), the Supreme Court made it clear that "protected First Amendment rights flow to unions as well as to their members." Id. at 819 n. 13, 94 S.Ct. at 2202 n. 13. Moreover, a union can assert these rights even though the alleged infringements of first amendment rights were directed exclusively at their members.
 
 
 27
 We affirm the decision of the district court insofar as it granted declaratory relief to Alexander and Skinner. We remand to the district court for a new trial on all other issues. The new trial is to be consistent with this opinion.