# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1591

_____

| | | |
|---|---|---|
| Randal L. Bechtel, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri |
| City of Belton, Missouri, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 8, 2001
Filed: May 14, 2001

_____

Before HANSEN and HEANEY, Circuit Judges and WEBBER,[1] District Judge.

_____

WEBBER, District Judge

The District Court[2] granted defendant's motion for summary judgment on Randal L. Bechtel's ("Bechtel") First Amendment freedom of speech claim for retaliation filed pursuant to 42 U.S.C. § 1983 and on his state action claim for unlawful employment

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

retaliation. Bechtel argues only the merits of his first amendment claim in this appeal. We affirm.

I.

Bechtel currently holds the same position of Assistant Fire Chief in the Belton Emergency Services Department ("Fire Department") for the City of Belton, Missouri, that he held when he alleges his constitutional rights were violated. The Fire Department is divided into shifts A, B and C. At the time of the alleged retaliatory actions by the City of Belton ("City"), Bechtel, as Assistant Fire Chief, was in charge of B shift, reporting to Chief Deputy Neil Bangs and Fire Chief Herman Denkler. The chain of command for the Belton Emergency Services Department is Firefighter, Captain, Assistant Fire Chief, Deputy Fire Chief, Fire Chief, Assistant City Administrator, and City Administrator.

Beginning in 1993, Bechtel spoke at fire department meetings, to an assistant city administrator and to a city councilman about his concerns related to the Fire Department's deficiencies in pre-fire planning for public and multi-occupancy buildings, in physical fitness requirements, in radio communication equipment, in operating procedures, and he raised issues concerning manufacturing faults on a new ambulance. Bechtel claims that retaliatory action was taken against him by the City in that he was denied performance evaluations and the possibility of earning a merit increase; he did not receive a longevity pay check because he had not been given his final step increase; and he was placed on "secret probation." He seeks a remedy for the City's alleged retaliatory actions taken against him because of the exercise of his First Amendment free speech rights.[3]

---

[3]The parties recognize "that a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." Connick v. Myers, 461 U.S. 138, 140, 103 S.Ct. 1684 (1983).

The City Administrator has ultimate authority to approve or rescind departmental personnel decisions under the City's appeal mechanism for review of disciplinary action imposed against employees. After Bechtel was suspended in 1997 for allegedly mishandling a personnel matter, Assistant City Administrator, Brad Foster, in the absence of the City Administrator, favorably considered Bechtel's appeal by rescinding his suspension, rewriting his performance evaluation, and substituting a reprimand in place of the formerly imposed suspension. At the time of Bechtel's aforementioned suspension, B shift was experiencing documented problems. Several firefighters filed grievances regarding Bechtel's behavior. Bechtel has sought no other redress for any claimed wrongful action through the City's appellate procedures at any time since his successful appeal of the suspension.

II.

Bechtel's first point on appeal is that the District Court erred in granting the City's motion for summary judgment because genuine issues of material fact remain that should only be resolved by jury determination. "We review a grant of summary judgment *de novo*, applying the same standard as the district court: whether the record, viewed in a light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Roberson v. Hayti Police Dept., 241 F.3d 992, 994 (8th Cir. 2001) (quoting Rabushka v. Crane Co., 122 F.3d 559, 562 (8th Cir. 1997)). The Court is to view the evidence and the inferences which may reasonably be drawn from it in the light most favorable to the nonmoving party. Lambert v. City of Dumas, 187 F.3d 931, 934 n.3 (8th Cir. 1999) (citing Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996)).

The facts most favorably considered for Bechtel reflect that in the Spring of 1997, Ronald Trivitt ("Trivitt"), City Administrator; Brad Foster ("Foster"), Assistant City Administrator; Fire Chief Herman Denkler ("Denkler"); Chief Deputy Fire Chief Neil Bangs ("Bangs"); and Captain Tad Riggert ("Riggert") met in City Hall and discussed

some issues relating to the B shift supervised by Bechtel. The exact scope of their discussion is unknown, but thereafter Denkler transferred Riggert to B shift where he was to report anything to Bangs that Riggert regarded as non-performance or poor performance on B shift. Additionally, Bechtel claims that firefighter Barry Kuhns was transferred to B shift to develop evidence of non-performance on B shift, to "spy" on Bechtel and to gather information to be used against him in retaliation for exercise of his free speech. Fire Chief Richard R. Davidson replaced Denkler in 1999 and was told by Riggert that he had been instructed to report poor performance on B shift to Bangs back in 1997.

Bechtel received no performance evaluation merit increase for 1997. Trivitt instructed Denkler to review Bechtel's performance for that year, but Denkler failed to make that review. Bechtel neither complained to nor notified Trivitt of his failure to receive a performance evaluation or merit increase for 1997. While he received a performance evaluation in 1998, he received no merit increase, but again neither complained nor appealed the evaluation.

To support Bechtel's argument that Riggert was placed on B shift as a spy by senior officials in the Fire Department and the City, he offers, in part, segments of Riggert's deposition testimony. One version of Riggert's testimony suggests that Bangs and Denkler instructed him and others to document Bechtel's activities on B shift and that Trivitt and Foster were aware of the instructions. Bangs and Denkler deny any instruction to Riggert to spy on Bechtel and others. In other testimony, Riggert says Trivitt and Foster were not present at the meeting. It is undisputed that while Riggert documented Bechtel's activities while working on B shift, no written conclusions of Riggert or Denkler, or anyone associated with the personnel transfers, were placed in Bechtel's personnel file. There is no evidence that the City Administrator was ever notified of any reports or actions of the transferred personnel concerning Bechtel. During oral argument, Bechtel's counsel emphasized the existence of genuine issues of material fact concerning the presence or absence of Trivitt at the meeting. Bechtel also

claims error of the District Court in precluding him from obtaining copies of personnel files.

III.

A lawsuit may be maintained under 42 U.S.C. § 1983 for a municipality's violation of an employee's constitutional rights by actions of an individual representing official policy.

> We conclude, therefore, that a local government may not be sued under §
> 1983 for an injury inflicted solely by its employees or agents. Instead, it is
> when execution of a government's policy or custom, whether made by its
> lawmakers or by those whose edicts or acts may fairly be said to represent
> official policy, inflicts the injury that the government as an entity is
> responsible under § 1983.

Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). Under this standard, Bechtel can assert a claim for relief against the City for a constitutional tort if he meets two fundamental prerequisites. First, he must show that the municipality acted to inflict an injury through an official proclamation of the municipality's officers (officials whose edicts or acts represent official policy) or through custom.[4] Secondly, he must show constitutional injury.

"We have assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915 (1988) (citing Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398 (1980)). "[A] 'policy' is an official policy, a deliberate choice of a guiding

---

[4]It is undisputed that Trivitt had sufficient decision-making authority to bind the City for purposes of 42 U.S.C. § 1983. Bechtel offers no evidence that the City is liable because of a pattern or custom of widespread unconstitutional action.

principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998)).

Bechtel argues that there is a genuine issue of material fact in dispute under the first element of Monell. The District Court's opinion and Bechtel's counsel's argument documented Riggert's conflicting statements concerning the presence of Trivitt at the meeting in which Riggert was allegedly instructed to document the activities of Bechtel on B shift. Riggert first stated that Trivitt was present at this meeting. However, he later recanted and stated that he was not present at this meeting. According to Bechtel, the presence or absence of Trivitt constituted a genuine issue of material fact and the District Court erred in entering summary judgment in favor of the City.

To survive a motion for summary judgment, Bechtel must come forward with factual support that Trivitt acted in retaliation because of the exercise of Bechtel's protected First Amendment rights. Considering the record in the light most favorable to Bechtel, Trivitt and Foster, according to Riggert, was aware of Denkler's actions. There is no evidence that Trivitt or Foster at any time ordered Riggert either to report to B shift or to gather information that could support allegations of inappropriate conduct in retaliation against Bechtel or that Foster or Trivitt took any retaliatory action against Bechtel. Bechtel alternatively argues that Denkler, not Trivitt, had final decision-making authority, because Riggert testified on one occasion that Denkler told him to spy on Bechtel on B shift and "document anything that he felt was inappropriate." In his brief, Bechtel recognizes that "the appellee's [City's] Fire Chief was in charge of establishing rules, regulations, policies and procedures for the operation of the fire department." He argues that because Denkler had this authority, he could bind the City for the claimed retaliatory conduct. Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292 (1986), requires that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Denkler had no authority as the "highest official responsible for setting policy." City of

St. Louis v. Propratnik, 485 U.S. at 123. His authority was limited to the operations of the Fire Department which were subject to review by the City Administrator.

Next, Bechtel argues that Trivitt delegated his authority to Denkler, and that the City is responsible for Denkler's actions. Bechtel reasons that because Denkler was authorized to make employment decisions within the Fire Department, he had delegated authority to bind the City as the final decision-maker. That authority was never delegated or relinquished in any fashion by Trivitt. There is no evidence to support this delegation of authority theory, and it is inconsistent with Bechtel's personal experience in the City's appellate procedure.[5]

Bechtel takes exception to the District Court's conclusion that he was never disciplined as a result of Riggert's documentation of his conduct on B shift, because he was placed on secret probation. In his brief, Bechtel states, "assuming arguendo that he was not formally desciplined after the Spring of 1997 meeting, evidence shows he did not get a performance revaluation by the September 15, 1997 deadline without which he could not reach next pay scale." There is no evidence that Trivitt had any role in denying this evaluation, and, in fact, to the contrary, he directed Denkler to make the revaluation.

Facts most favorable to Bechtel reveal that Trivitt was aware of Denkler's orders to place additional personnel on B shift to observe performance on that shift, and that Riggert documented activities on B shift. Actions alleged to be in retaliation for Bechtel's First Amendment rights were imposed by Denkler who clearly lacked final decisionmaking authority.

Finally, Bechtel fails to prove a constitutional injury because he cannot show that any action of Trivitt resulted in an adverse employment action against him. In order to

---

[5]Bechtel's participation in the City's appellate procedure confirms his recognition of the final authority of the City Administrator over personnel matters.

establish a claim for unlawful First Amendment retaliation under 42 U.S.C. § 1983, a public employee must show that in addition to participation in a protected activity, he or she suffered an adverse employment action and that there was a causal connection between the protected activity and the adverse employment action. See Hudson v. Norris, 227 F.3d 1047, 1050-51 (8th Cir. 2000) (citing Graning v. Sherburne County, 172 F.3d 611, 615 (8th Cir. 1999)). "Although 'actions short of termination may constitute adverse actions . . .', 'not everything that makes an employee unhappy is an actionable adverse action.'" Montandon v. Farmland Industries, Inc., 116 F.3d 355, 359 (8th Cir. 1997) (discussing an unlawful retaliation claim in the context of Title VII) (quoting Smith v. St. Louis University, 109 F.3d 1261, 1266 (8th Cir. 1997); Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996)). To constitute an adverse employment action, "the action must have some adverse impact" on the employee." Id.[6] Defined another way, an adverse employment action must effectuate "a material change in the terms or conditions of . . . employment." Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (discussing adverse employment actions in the context of a retaliation claim brought along with a Title VII claim); see also Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (no prima facie case is made where changes in duties or working conditions cause no materially significant disadvantage to establish an adverse employment action).[7]

---

[6]The Court in Montandon stated that the action complained of (a transfer) as adverse did not "entail a change in position, title, salary, or any other aspect of Montandon's employment." Montandon, 116 F.3d at 359. Furthermore, Montandon's performance evaluation, despite being thirty points lower than the year before, was not used as the basis for any action against Montandon. Id. Bechtel currently maintains the same position be held when the alleged retaliation occurred.

[7]The cases discussing retaliation in the employment context are uniform in their requirement that there be some material change in the Plaintiff's conditions of employment. See Scusa v. Nestle U.S.A. Co. Inc., 181 F.3d 958, 968-69 (8th Cir. 1999) (finding no adverse employment action where Plaintiff suffered no diminution in title, salary or benefits, received her normal raise under the collective bargaining

Absent some evidence in the record which links statements, edicts or orders, promulgated by or stated by Trivitt to a violation of Bechtel's constitutional rights, the presence or absence of Trivitt at that alleged meeting is immaterial. No alleged adverse employment action claimed to have been suffered by Bechtel can be linked to any effort by the City to infringe on Bechtel's First Amendment rights. Because Bechtel has failed to demonstrate that his First Amendment rights were violated by the City, Bechtel's first point on appeal is denied.

Bechtel argues in his second point on appeal that the District Court erred in precluding him from obtaining copies of personnel files of other Fire Department personnel. Bechtel claims that he was entitled to examine these files because the City claimed, as a defense, that Bechtel was treated no differently than other Fire Department employees. Bechtel cites to Missouri Nat'l Educ. Assoc. v. New Madrid County R-1, 810 F.2d 164, 166 (8th Cir. 1987). However, in Missouri Nat'l Educ. Assoc., the appellants had adduced evidence of adverse employment action by the appellees. That is not the case here. Any possible error on the part of the District Court is harmless in light of the failure by Bechtel to provide evidence that the City retaliated against him for

---

agreement, and received a requested transfer); see also Cross v. Cleaver, 142 F.3d 1059, 1073 (8th Cir. 1998) (employment actions sufficient to constitute an adverse employment action are usually actions involving an actual or apparent wielding of authority resulting in a material employment disadvantage).

exercising his First Amendment rights.[8]  Accordingly, Bechtel's second point on appeal is denied.

Based upon the foregoing discussion, we affirm the District Court's grant of summary judgment to the City of Belton.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[8]The Court notes that Bechtel's original requests for production sought 143 categories of documents.  After making his request for production of the payroll records, the City served a written objection on Bechtel to his request for the payroll files.  Id.  Bechtel did not file a motion to compel production of the records, but rather raised the issue in a telephone conference. Bechtel later argued that he could not respond to the City's assertion in its motion for summary judgment that he was not treated differently from other similarly situated City employees because he had not received the payroll records of certain employees.  However, Bechtel did not attempt to narrow the requested documents to those who were similarly situated to himself, and he did not attempt to identify those persons who were similarly situated.  See Connor v. Rickitt & Coleman, Inc., 84 F.3d 1100, 1103 (8th Cir. 1996) (challenge to granting summary judgment was denied, notwithstanding employee's allegation that she did not have an adequate opportunity to conduct discovery before the district court made an adverse summary judgment ruling, where she informed the Court of defendant's objections to her discovery but never filed a motion to compel).