# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

—————————

No. 04-3922

—————————

Charles Russell,

        Appellant,

   v.

Hennepin County; Sheriff Patrick McGowan; Chief Deputy Michele Smolley; Inspector Thomas Merkel; and Former Inspector Richard Estensen, officially and individually,

        Appellees.

Appeal from the United States District Court for the District of Minnesota.

—————————

Submitted: June 23, 2005
Filed: August 25, 2005

—————————

Before MELLOY, HEANEY and GRUENDER, Circuit Judges.

—————————

GRUENDER, Circuit Judge.

Charles Russell brought suit against Sheriff Patrick McGowan, Chief Deputy Michele Smolley, Inspector Thomas Merkel, and former Inspector Richard Estensen, in their individual and official capacities, and Hennepin County, Minnesota

(collectively "the County"), alleging his six-day prolonged detention at the Hennepin County Adult Detention Center ("ADC") violated the Fourth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 and Article I, Section 10 of the Minnesota Constitution, and constituted false imprisonment under Minnesota tort law. The district court[1] granted the County's motion for summary judgment on the § 1983 claim and declined to exercise supplemental jurisdiction over the remaining state claims. Russell appeals from the district court's order granting summary judgment to the County on his § 1983 claim. For the reasons discussed below, we affirm the district court's summary judgment order.[2]

## I.      BACKGROUND

Charles Russell was arrested on September 26, 2000 for the felony offense of making terroristic threats in violation of Minn. Stat. § 609.713, subd. 1. After Russell entered a plea of not guilty, the Fourth Judicial District Court set bail at $10,000 with conditional release and no contact with the victim. According to the County's In-Custody Records (ICR) Quick Reference Guide:

> A conditional release is granted to some inmates if it is determined that they do not pose a significant threat to the community and there is a substantial likelihood that the person will appear at future Court dates. Conditional releases are most often granted in the Court room and documented on the inmate's Court Tracking Sheet.

Russell, however, did not post bail and remained an inmate at the ADC.

---

[1]The Honorable Paul S. Magnuson, United States District Judge for the District of Minnesota.

[2]Appellees filed a Motion to Strike Portions of Appellant's Brief. On February 18, 2005, the Court entered an order taking this motion for consideration with the case. We deny the motion to strike as moot because we affirm the district court's order of summary judgment without reference to the subject matter of the motion.

On Thursday, November 9, 2000, Russell appeared before Judge Bruce Hartigan and entered a plea of guilty. The terms of his plea agreement allowed Russell to be released conditionally without bail while awaiting the imposition of a sentence. After he accepted Russell's plea of guilty, Judge Hartigan ordered Russell to cooperate with the probation department in the creation of a presentence investigation report and then told him, "You will be out. You go over to Probation and talk to them and go over everything and then five or six weeks from now we will be able to give you a stay of imposition[.]"

Consistent with the terms of the plea agreement and Judge Hartigan's requirement that Russell meet with the probation department to "go over everything," Judge Hartigan's courtroom deputy recorded a conditional release in Russell's "ADC Inmate Tracking Sheet." Russell's conditional-release status was also recorded in the Subject in Process ("SIP") computerized records system, which reflected Judge Hartigan's order for a presentence investigation report and that Russell's case was referred to the probation department. The court uses the inmate tracking sheet and the SIP records to communicate to the ADC the status of an inmate after each hearing. After the change-of-plea hearing, however, neither Russell's inmate tracking sheet nor his SIP records indicated that he was to be released immediately.

Pursuant to ADC policy, "all persons legally entitled to release . . . shall be processed and released as expeditiously as possible . . . [and] confinement shall continue only so long as is necessary to meet the demands of orderly and efficient operation." To this end, "Court Services personnel must interview the inmates prior to [a conditional] release."[3] During this meeting, a probation officer and the inmate

---

[3]We adopt the parties' practice of using the specific appellation "probation department" rather than Court Services. It would appear that the probation department falls under the auspices of the district court. In any event, there is no evidence in the record that the probation department falls under the auspices of the ADC or the County. Russell did not sue a probation officer or the probation

review the conditions of the inmate's release. At the conclusion of the meeting, the probation officer must inform the ADC that the meeting has occurred, that the inmate is aware of the conditions of his release and that he is ready for release. The ADC Records Unit then commences the ADC's administrative processing necessary for a final release.

The progress of an inmate's conditional release is monitored by the Records Unit. Once an inmate subject to a conditional release returns from court, his file is placed in a designated location within the ADC to be accessed by the probation department staff. If a probation officer does not sign an inmate out in a timely manner, the inmate's paperwork is placed in a "check daily" file. Records Unit staff will, on a daily basis, attempt to contact the probation department or the appropriate judge to clarify the inmate's situation. These efforts are generally documented informally with "post it" notes that do not become part of the inmate's permanent file.[4]

After the hearing, at approximately 3:40 p.m., Russell was returned to the ADC. About two hours later, Russell began to ask about his release. Consistent with ADC policy, the housing deputies on duty told Russell that his inquiries must be submitted in writing on an inmate request form. On his first inmate request form, dated Friday, November 10,[5] Russell wrote, "I was released from custody yesterday,

department nor did he allege that the probation department is responsible for his prolonged detention.

[4]At one point, Russell appears to argue that the lack of permanent records caused his prolonged detention. He does not, however, put forth a causal connection between his temporary prolonged detention and the ADC's failure to keep permanent records nor can we decipher any.

[5]The state court was closed on Friday, November 10, 2000 in observance of Veteran's Day.

and I'm still confined. Could you find out what is the procedure, why I'm still languishing here[?]" The November 10 inmate request form reflects that a housing deputy promptly "talked to [Russell and] explained the process."

In his other inmate request form, received Saturday, November 11, 2000, Russell wrote, "I hereby seek information about my release from custody. My case was resolved at about 4 pm on Thursday and I'm still confined without any explanation or information. What's the procrastination about?" According to the November 11 inmate request form, Deputy T. Bush explained to Russell that he "need[ed] to be signed [out] by Probation." Russell apparently also filed other inmate request forms and made daily informal inquiries of the guards regarding his release.

By all accounts, Monday, November 13, 2000 was the first available business day for a timely meeting between Russell and a probation officer. This required meeting did not, however, occur on Monday or Tuesday. Finally, apparently on the advice of a fellow inmate, Russell contacted his attorney on Tuesday, November 14.

ADC is unable to produce records reflecting its daily efforts to check Russell's status. However, at approximately 11:00 a.m. on Wednesday, November 15, 2000, Judge Hartigan faxed to Dottie Schwantz, an ADC Custody Records Coordinator, a Modification of Sentence/Commitment order stating that "Defendant should be NBR with no contact with the victim rather than CR."[6] The ADC released Russell less than three hours after receiving the written order.

---

[6]NBR is shorthand for an unconditional release with no bail required. The abbreviation CR means conditional release. According to Donald J. Johnson, ADC custodian of records, ADC personnel understand a conditional release to mean that a probation officer will meet with the inmate to discuss the terms of the release. This understanding is consistent with ADC policy. After the inmate's meeting with a probation officer has occurred and the probation officer has completed the necessary paperwork, the Records Unit will commence the final release processing.

Subsequent to his release, Russell apparently met with a probation officer for his presentence interview. On February 22, 2001, the court sentenced Russell to a stay of imposition of sentence with a 53-day term at the ADC as one of the conditions. He was given 53 days' credit against that sentence for the entire time he spent at the ADC.

Russell then brought this suit against Hennepin County and four current and former county officials in their individual and official capacities.[7] In his complaint, Russell alleged that ADC policy or custom caused his prolonged detention in violation of the Fourth and Fourteenth Amendments to the United States Constitution. He also asserted claims against the County for violating Article I, Section 10 of the Minnesota Constitution and for false imprisonment. The defendants argued in a motion for summary judgment that Russell did not suffer a deprivation of constitutional rights, failed to identify an unconstitutional policy or custom and could not prove that a County policy caused his prolonged detention. In his response to the defendants' motion for summary judgment, Russell agreed to dismiss three of the four individuals while pursuing his claims against the remaining defendants, Hennepin County and Sheriff McGowan. The district court granted the County's summary judgment motion, entered judgment in favor of the defendants, dismissed the § 1983 claim and declined to exercise supplemental jurisdiction over the state law claims.

---

[7]Under Minnesota law, the county sheriff and county board share responsibility for the operation of the county jail. *See* Minn. Stat. §§ 387.11, 641.01. To this end, Russell brings claims against Sheriff McGowan in his individual and official capacities. He does not, however, allege that Sheriff McGowan or any other party to this appeal directly caused his prolonged detention or were responsible for implementing the challenged ADC policy. Therefore, any claims against Sheriff McGowan in his individual capacity are without merit. *See Clay v. Conlee*, 815 F.2d 1164, 1169-70 (8th Cir. 1987). Further, Russell has abandoned on appeal his § 1983 claim against Smolley, Merkel and Estensen.

## II.    DISCUSSION

A municipality may be liable under § 1983 when an official municipal policy or custom caused a violation of a plaintiff's substantive due process rights. *Hayes v. Faulkner County*, 388 F.3d 669, 674 (8th Cir. 2004); *see also City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989) (requiring that a plaintiff establish a municipal policy or custom that caused a deprivation of his constitutional rights). Further, "[m]unicipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability." *Angarita v. St. Louis County*, 981 F.2d 1537, 1546 (8th Cir. 1992) (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988)). Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee. *Avalos v. City of Glenwood*, 382 F.3d 792, 802 (8th Cir. 2004). Generally, prolonged detention beyond the term authorized by law unlawfully deprives a prisoner of rights protected under the due process clause of the Fourteenth Amendment. *Slone v. Herman*, 983 F.2d 107, 110 (8th Cir. 1993). However, a municipality is not liable for the negligent acts of its employees. *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (holding that negligence does not give rise to a § 1983 claim based on an alleged due process violation); *see also Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997) ("[R]igorous standards of culpability and causation [for a § 1983 claim] must be applied to ensure that the municipality is not held liable solely for the actions of its employee."). Though it is difficult to ascertain the exact basis for Russell's claim of municipal liability, he appears to argue that ADC policy is unconstitutional on its face and, alternatively, that ADC policy or the custom of failing to follow ADC policy caused his prolonged detention.

In granting summary judgment to the County, the district court concluded that ADC personnel properly processed Russell based on his court records and ADC policy regarding the monitoring of inmates subject to conditional release. The records available to the ADC at the time of Russell's detention show that he was

subject to a conditional release. Requests for information made by Russell were answered promptly. Consistent with Judge Hartigan's oral order at Russell's change-of-plea hearing, ADC personnel explained to Russell that he first had to meet with the probation department. Upon receiving Judge Hartigan's amended order of release eliminating conditional release, Russell was immediately processed and discharged from ADC custody. The district court concluded, based on these facts, that Russell's prolonged detention was the result of "confusion between ADC and the court." *Russell v. Hennepin County*, No. 03-4889, slip op. at 6 (D.Minn. Oct. 8, 2004). On this basis, the district court held that Russell's prolonged detention did not rise to a constitutional violation.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Watson v. Jones*, 980 F.2d 1165-66 (8th Cir. 1992) ("In reviewing a decision of the district court to grant summary judgment, we must apply the same strict standard as the district court; therefore, our review is de novo."); *see also Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004) (reviewing the record on summary judgment in a light most favorable to the non-moving party and affording him all reasonable inferences drawn from the record). The grant of summary judgment in favor of the County is appropriate if there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law. *See Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005). We are not, however, limited to the district court's reasoning and may affirm the grant of summary judgment on any ground supported by the record. *Gamradt v. Fed. Labs., Inc.*, 380 F.3d 416, 419 (8th Cir. 2004). Based on our review of the record, we hold that ADC policy is not deliberately indifferent to the constitutional rights of convicted felons subject to conditional release, that Russell has failed to present material evidence upon which a reasonable jury could find that ADC policy caused his prolonged detention and that Russell has failed to present any evidence supporting his claim that the ADC has a custom of violating its policies regarding the monitoring of inmates subject to conditional release.

We first address Russell's argument that ADC policy regarding the monitoring of inmates subject to conditional release is deliberately indifferent to convicted felons' constitutional rights because of "the lack of policies to expedite the process" of conditional release. "A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question.'" *Hayes*, 388 F.3d at 674 (8th Cir. 2004) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights. *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999). However, a policy intended to address an inadequacy cannot then also be deliberately indifferent to that inadequacy. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998). While ADC policy may not be the very best means of monitoring the daily progress of convicted felons slated for conditional release, it reflects a deliberate policy by the ADC to assist in the timely discharge of those inmates.

Russell also has not offered any evidence that the County had notice of any alleged inadequacy in ADC policy or that the policy's alleged inadequacy was so patently obvious that the County should have known a constitutional violation would result. Indeed, there is no evidence that the challenged policy impermissibly shirks responsibility for the administration of inmates, *Hayes*, 388 F.3d at 674, allows too many prolonged detentions, *see Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001), or otherwise exhibits a deliberate indifference to the constitutional rights of a convicted felon, *see Canton*, 489 U.S. at 388. Therefore, Russell's argument that ADC policy is inadequate to ensure the timely conditional release of inmates is without merit.

Russell argues in the alternative that his prolonged detention was caused by ADC personnel following ADC policy regarding the monitoring of inmates subject

to conditional release. "[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton*, 489 U.S. at 385. This requires a plaintiff to show that the municipal policy was "the moving force [behind] the constitutional violation." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting *Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978)). Accordingly, Russell must show that ADC policy caused or was highly likely to cause his prolonged detention. *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 779-80 (8th Cir. 2001) (requiring a higher standard of causation because of the stringent standard of fault for municipal liability). To this end, Russell argues that ADC policy regarding the monitoring of inmates subject to conditional release was the moving force behind his prolonged detention. We disagree.

"Municipalities cannot be held liable under § 1983 . . . 'unless action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Kuha v. City of Minnetonka*, 365 F.3d 590, 603 (8th Cir. 2003) (quoting *Monell*, 436 U.S. at 691). There is no evidence in the record supporting Russell's allegation that ADC policy was the moving force behind his prolonged detention. Indeed, at worst, his detention of six additional days resulted not from the execution of ADC policy but from the failure to assiduously follow the policy. *See Williams v. Mensey*, 785 F.2d 631, 636 (8th Cir. 1986) (affirming judgment as a matter of law because the correctional officers' alleged misconduct in carrying out an official's order, and not the order itself, was the cause of the constitutional deprivation). This single instance of allegedly failing to follow official policy may rise to the level of negligence. It does not, however, suffice to establish causation as required to advance a claim of municipal liability under § 1983. *Wilson v. Lawrence County*, 260 F.3d 946, 955 (8th Cir. 2001) (citing *Daniels*, 474 U.S. at 334, for the proposition that "protections of the Due Process Clause are not triggered by negligence").

We also note that the failure of individual County employees to comply fully with ADC policy is not the basis of Russell's claim. As such, his reliance on *Davis v. Hall* is inapposite. There, certain prison officials' disregard for a written order of release resulted in a prolonged incarceration of 57 days. The *Davis* Court concluded that those individuals responsible for Davis's prolonged incarceration were not entitled to qualified immunity. 375 F.3d at 720. Unlike this case, the plaintiff in *Davis* did not claim that his prolonged incarceration was directly caused by prison policy or custom. And unlike *Davis*, Russell does not claim that any county employee is individually responsible for his prolonged detention.

Russell also appears to argue that the custom of failing to follow ADC policy caused his prolonged detention. "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . . as to [have] the force of law.'" *Harris v. City of Pagedale*, 821 F.2d 499, 504 n.7 (8th Cir. 1987) (quoting *Monell*, 436 U.S. at 691). To establish a constitutional violation resulting from such a custom, a plaintiff must show that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized. *Larson v. Miller*, 76 F.3d 1446, 1453 (8th Cir. 1996) (en banc). In the context of this litigation, therefore, Russell must produce evidence that, at the time of his prolonged detention, there was a widespread and persistent failure to follow the relevant ADC policy, that some county policymaker was aware of this failure and was either deliberately indifferent to or tacitly approved of such conduct and that his prolonged detention was caused by this custom of failing to follow ADC policy. *Id.* Russell has not offered evidence of a widespread pattern of failing to follow the "check daily" policy, *McGautha v. Jackson County*, 36 F.3d 53, 57 (8th Cir. 1994) ("Liability for an unconstitutional custom or usage . . . cannot arise from a single act."), the County's knowledge of such conduct, *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 659 (8th Cir. 2001) ("[A governmental entity] may not be found to have been deliberately indifferent to or to

have tacitly authorized conduct of which it was unaware."), or that this custom of failing to follow ADC policy caused his prolonged detention, *see Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807-08 (8th Cir. 1994). At most, the record shows a single deviation from an official policy. While this might give rise to a claim of negligence, a single instance of failing to follow official policy is insufficient to establish a custom of violating the policy. *See Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991) ("[A] single deviation from a written, official policy does not prove a conflicting custom or usage."). Accordingly, summary judgment on Russell's claim that the custom of failing to follow ADC policy caused his prolonged detention is appropriate.

After giving Russell the benefit of every reasonable inference and a very generous interpretation of his arguments, we conclude that summary judgment was properly granted. Court documents available to the ADC at the time of Russell's prolonged detention recorded that he was subject to a conditional release. ADC policy regarding the monitoring of inmates subject to conditional release reflects deliberate steps by the ADC to balance the constitutional rights of those prisoners with the protection of their victims and the general public. Russell has failed to produce any evidence that this policy, which is not unconstitutional on its face, caused his prolonged detention. Further, he has not offered any evidence establishing a custom of failing to follow ADC policy. Because we conclude that Russell has failed to raise a material factual dispute as to the existence of a policy or custom that caused his prolonged detention, we need not consider whether the additional six days in the custody of the ADC rises to the level of a constitutional injury. *See Bechtel v. City of Belton*, 250 F.3d 1157, 1160 (8th Cir. 2001).

## III. CONCLUSION

Russell failed to present any evidence that ADC policy regarding the monitoring of inmates subject to conditional release is unconstitutional on its face or

otherwise caused his prolonged detention.  Further, he failed to present any evidence of a custom of violating ADC policy.  Accordingly, for the reasons discussed above, we affirm the district court's grant of summary judgment in favor of the County.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent.  Russell was unlawfully detained due to administrative error.  The majority asserts that Russell cannot prevail on his claim that Hennepin County ("the County") deprived him of a constitutionally protected right because he "failed to present material evidence upon which a reasonable jury could find that ADC policy caused his prolonged detention." *Ante* at 9, 12.  I disagree.  Russell was held in jail for six days after Judge Hartigan ordered him released, in spite of Russell's daily, repeated requests that the County investigate his unjustified detention, nothing changed; each day Russell complained about being held, yet each day he remained unjustifiedly incarcerated.  Any policy that leads to or permits that result gives rise to an inference that there has been an unconstitutional deprivation of one's liberty.  *Accord Ricketts v. City of Columbia*, 36 F.3d 775, 779-80 (8th Cir. 1994) (noting that in § 1983 actions a jury must decide whether there is a causal link between the municipal policy and the constitutional violation).

The majority would parse Russell's claim into discrete questions about whether the ADC policy violated conditional-release inmates' constitutional rights, and whether the ADC staff customarily disregarded ADC release procedures with respect to such inmates' constitutional rights.  To compartmentalize Russell's argument in this fashion misses the point because Russell was not a conditional-release inmate.  The ADC has a detailed written policy with respect to the processing of inmates subject to a conditional release.  However, it has <u>no</u> policy for investigating possible administrative errors related to an inmate's release.  Under these circumstances, the question is not whether a policy – established in writing or through custom – is

-13-

followed, but whether the failure to have <u>any</u> policy with respect to the matter evidences deliberate indifference to the rights of an inmate. I believe it does.

Judge Hartigan's order required that Charles Russell be released promptly. It stated:

> I don't want you to have any contact with [the victim] because <u>I don't want to throw you in jail</u>, which is what I will have to do. We are going to order a presentence investigation and you are going to cooperate with that. . . . <u>You will be out.</u> You go over to Probation and talk to them and go over everything and then five or six weeks from now we will be able to give you a stay of imposition just like [the defendant's attorney] wants for you and negotiated for you. . . . And so that's what I want to do. <u>I don't want to have to put you in jail.</u>

(T. of Felony Plea and Factual Basis, *State v. Russell*, Dist. Ct. Minn. No. 00062767 at 5-6 (emphasis added)) .

The court deputy erred in reporting to the ADC that Russell's release was to be conditioned on his first meeting with probation. On November 9, 2000, Russell called the error to the attention of ADC staff within two hours of being confined. The staff made no attempt to contact the court to determine whether Russell should be immediately released or held until after he met with a probation officer. Instead, ADC staff told Russell to fill out a "green slip" (an Inmate Request Form) stating his complaint. Russell did as directed and completed a green slip on November 10. He wrote, "I was released from custody yesterday, and I'm still confined. Could you find out what is the procedure, why I'm still languishing here[?]" The ADC took no action. On November 11, Russell submitted another slip: "I hereby seek information about my release from custody. My case was resolved at about 4 p.m. on Thursday and I'm still confined without any explanation or information. What's the procrastination about?" Still no action was taken by the ADC. Russell testified that he filed similar complaints on each of the days that he was unlawfully incarcerated.

-14-

The ADC never contacted either the court or the probation office to determine the validity of Russell's complaint; they simply held him in the ADC.

The majority would excuse the ADC's failure to act because November 10 was a holiday, followed by the weekend, resulting in three consecutive days that the courthouse was closed. I find it hard to believe that in Minnesota's most populous county, when a serious question arises as to the unjustified detention of an inmate, there is no procedure to contact court personnel over a weekend. Assuming, though, that the majority is correct in concluding that the court was inaccessible for three days, there is still no excuse for the ADC's failure to investigate Russell's claim on Monday or Tuesday. The ADC never inquired about Russell's status, choosing instead to accept the court deputy's erroneous report of Judge Hartigan's order. Russell was released six days later only because his lawyer, not the ADC, contacted the court.

In the recent case of *Hayes v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004), our court was faced with a similar circumstance. In *Hayes*, the plaintiff was held in jail for a prolonged period before going to court. He notified the proper authorities of the extended detention, to which the jail administrator responded that it was not his responsibility to investigate. Plaintiff Hayes sued the county, alleging that its policy of delegating responsibility for setting court dates to the court administrator was deliberately indifferent to the constitutional rights of arrestees. Our court agreed, holding that a policy that "attempts to delegate the responsibility of bringing detainees to court for a first appearance and ignores the jail's authority for long-term confinement . . . is deliberately indifferent to detainees' due process rights." *Id.* at 674.

Russell's situation is akin to *Hayes*. He filed several notices to the ADC staff, informing them that the court had ordered his release. Instead of investigating his claim, the ADC staff  ignored it and directed Russell to the probation department.

*Hayes*, however, forbids such a delegation; it is the ADC's responsibility to institute policies and customs that ensure detainees are not held longer than necessary and then to follow such policies. I would remand to the district court with directions to permit Russell to proceed to trial to determine whether the time he was detained was of sufficient constitutional significance to justify an award of damages, and, if so, the amount of those damages.

_____