# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3094
_____

Forrest Edward Harris

*Plaintiff - Appellant*

v.

Corizon, LLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 12, 2022
Filed: May 9, 2022
[Unpublished]
_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.
_____

PER CURIAM.

Forrest Harris brought a prisoner civil rights action against Corizon, LLC, the contracted medical provider at the St. Louis City Justice Center (CJC) where Harris was an inmate, alleging that it was deliberately indifferent to his serious medical

needs. The district court[1] granted summary judgment to Corizon, concluding that Harris had failed to establish a pattern, practice, policy, procedure, or custom of denying appropriate medical care to inmates. We affirm.

## I. *Background*

From August 2016 to December 2017, Harris was incarcerated at CJC. From there, he was transferred to the Eastern Reception, Diagnostic and Correctional Center (ERDCC) where he remains. In 2012, prior to his imprisonment, Harris was diagnosed with large B-cell lymphoma in his abdomen, which was treated with surgery and chemotherapy. His cancer was in remission when he was arrested and incarcerated in 2016.

In August 2016, while at CJC, Harris saw Dr. Fe Fuentes, a Corizon physician. Harris requested pain medication for gout in both legs. Gout is a form of arthritis that is indicated by high uric acid levels in the blood and is normally treated by non-steroidal anti-inflammatory drugs such as Naproxen. Dr. Fuentes accordingly ordered Naproxen along with Gabapentin to treat Harris's leg pain.

Dr. Fuentes obtained Harris's medical records from Barnes-Jewish Hospital (BJC) and reviewed them with Harris at a follow-up appointment in September. At that appointment, Dr. Fuentes noted that Harris had a previous diagnosis of large B-cell lymphoma that was treated with eight months of chemotherapy. She ordered blood labs and referred Harris to an outside oncology specialist at BJC, Dr. Brad Kahl. In October, Dr. Kahl saw Harris and found him negative for recurrence of cancer. He noted that Harris's past blood work showed no sign of recurrence and

---

[1]The Honorable Patricia L. Cohen, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

informed Harris that the risk of recurrence was low. Harris complained of headaches to Dr. Kahl, and Dr. Kahl recommended a CT scan to investigate.

Later that month, Dr. Fuentes reviewed Dr. Kahl's recommendations and requested a CT scan of Harris's head, which was approved by the Corizon Regional Medical Director (RMD). Harris underwent a CT scan at BJC in November, and the radiology report indicated "a small contrast enhancing lesion . . . that may represent a vascular malformation." R. Doc. 55, at 5. The radiologist recommended an MRI for further evaluation, and Dr. Fuentes requested an MRI scan, which the Corizon RMD approved. In February 2017, Harris underwent an MRI at BJC, which showed normal results.

Harris continued to complain of headaches along with neck and back pain in the months following his MRI. Dr. Fuentes prescribed pain medications to treat his pain. In addition, Dr. Fuentes investigated Harris's back pain with an x-ray of his cervical spine. The x-ray results indicated only mild degenerative changes. Dr. Fuentes ordered additional blood labs for Harris in October 2017. These revealed that Harris had high cholesterol but did not have gout (as indicated by uric acid levels) or any other medical issue from the blood work. Dr. Fuentes also noted in October that Harris had a steady gait and was neurologically intact. In addition, Harris testified at his deposition that Dr. Fuentes regularly saw him and scheduled blood work for him and that the Gabapentin that she had prescribed him improved his pain symptoms.

After his transfer from CJC to ERDCC, Corizon medical staff at ERDCC assessed Harris and provided him with pain medication. A Corizon physician, Dr. Karen Rhodes, saw Harris at a telemedicine appointment in December 2017 to discuss his prior lab and x-ray results. Harris told Dr. Rhodes that he had a prior diagnosis of Hodgkins lymphoma in 2012 and that he had a recurrence of the disease approximately five months prior to his appointment. Dr. Rhodes noted that prior blood labs and x-rays were negative for recurrence of Hodgkins lymphoma, and he

ordered that Harris be placed in Corizon's Chronic Care Clinic for Cancer (Cancer Clinic) to review his prior cancer treatment and discuss follow-up options. Corizon's Chronic Care Clinics treat patients with chronic medical conditions and ensure that they are automatically scheduled for appointments with a doctor or nurse practitioner at regular intervals.

Another Corizon physician, Dr. Ishaan Haq, saw Harris in Corizon's Cancer Clinic later that month. Dr. Haq found no palpable masses or lymphadenopathy in Harris's abdomen. Dr. Haq prescribed Tylenol for pain as needed and scheduled a follow-up appointment at the Cancer Clinic in two months. In January 2018, the site Medical Director at ERDCC, Dr. Karen Duberstein, obtained and reviewed Harris's outside medical records from BJC and discussed his prior cancer treatment at BJC with him. Dr. Duberstein prescribed Gabapentin, Tramadol, and Tylenol ASA to treat Harris's pain. Harris had more blood tests later that month. They showed no sign of recurrence of cancer. Harris had a follow-up appointment with Dr. Duberstein at the end of the month. Harris reported improvement in pain symptoms and better sleep. Dr. Duberstein enrolled Harris into Corizon's Chronic Care Clinic for Pain (Pain Clinic) to manage his chronic neck and back pain.

A Corizon physician at ERDCC, Dr. Sandra Zakroff, saw Harris at Corizon's Pain Clinic in May 2018. Dr. Zakroff examined Harris and observed no facial grimacing, diaphoresis, or shortness of breath, and noted that Harris appeared comfortable and performed activities of daily living. Harris reported being concerned about possible cancer to Dr. Zakroff and complained of headaches, back pain, memory problems, and right-sided chest pain after laying on his right side. Dr. Zakroff renewed Harris's order for Gabapentin and planned a follow-up appointment with him in the Cancer Clinic to address his cancer concerns.

In June, Dr. Zakroff spoke via telephone with Corizon's consulting oncologist, Dr. Richard Kosierowski, and Corizon's Associate Regional Medical Director, Dr. Thomas Bredeman, about Harris's cancer treatment. During the call, the physicians agreed that Harris's risk of cancer recurrence was low and planned to continue monitoring him in the Cancer Clinic. Harris had regular appointments at the Cancer Clinic for the rest of 2018.

Dr. Zakroff met with Harris in the Cancer Clinic in February 2019. Harris reported continued headaches and pain in his abdomen and hip. Dr. Zakroff observed Harris walking with a slight limp into the examination room, saw him get on and off the exam table without difficulty, and noted a full range of motion in Harris's hips and knees without any expression of discomfort. Harris acknowledged that his cancer was in remission and declined additional pain medications, so Dr. Zakroff renewed his existing pain medications. From the February 2019 appointment on, Harris continued to be evaluated in Corizon's Cancer Clinic through regular physical examinations, blood labs, and imaging.

Harris brought suit against Corizon, alleging that he was denied medical care for his cancer, back pain, gout, and neuropathy. The district court granted summary judgment to Corizon, finding "undisputed evidence of Harris's regular and comprehensive medical treatment" and concluding that Harris did not establish a pattern, practice, policy, procedure, or custom of denying him appropriate medical care. R. Doc. 62, at 10.

## II. *Discussion*

We review de novo a district court's grant of summary judgment. *Thomas v. Heartland Emp. Servs. LLC*, 797 F.3d 527, 529 (8th Cir. 2015). In so doing, we view the evidence in the light most favorable to the nonmoving party and make all

reasonable inferences in his favor. *Id*. Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Section 1983 of 42 U.S.C. creates a cause of action for persons whose constitutional rights are violated in the execution of governmental policy, custom, or official action. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). This cause of action extends to private entities acting under color of state law, including those employed by a state to provide medical services to prison inmates. *West v. Atkins*, 487 U.S. 42, 54 (1988). When the defendant is a corporation acting under color of state law, the plaintiff must show the existence of a policy, custom, or action of those who represent official policy that inflicted an actionable injury. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also Southworth v. Mo. Dep't of Corr.*, 258 F. App'x 917, 917 (8th Cir. 2007) (unpublished per curiam) ("To defeat CMS's summary judgment motion, Southworth had to create trialworthy issues as to whether there was a CMS policy, custom, or action by those who represent official CMS policy, that inflicted an Eighth Amendment injury." (citing *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993))).

"A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Bechtel v. City of Belton*, 250 F.3d 1157, 1160 (8th Cir. 2001) (alteration omitted) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). An actionable custom requires

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)       Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)       That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 646 (8th Cir. 1990). The plaintiff must "show[] that the [supervising defendants] had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).

Harris fails to identify any policy, custom, or official action that caused him an actionable injury. The undisputed record shows that he continued to receive care for his medical issues while incarcerated and that the physicians whom he saw were attentive to his specific medical needs and cognizant of his medical history. Harris appears to argue that he did not receive his preferred care, but he never specifies what required medical care, in his view, he was denied. Appellant's Brief at 11–12 (admitting that Corizon "provided lab tests, chest x-rays, a[n] MRI and CT[-]guided biopsy," but maintaining nevertheless that Corizon "refrain[ed] from fully exploring the benefits of additional medical treatment"). The instant facts cannot support a *Monell* claim. *See Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118–19 (8th Cir. 2007) ("[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." (alteration in original) (quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992))). Harris has failed to establish that his continuous course of medical care somehow showed deliberate indifference on the part of the defendants. The evidence indicates that at all times, Harris's doctors responded timely and reasonably to his medical complaints. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239–40 (8th Cir.

1997) (finding no material fact dispute regarding deliberate indifference where "physicians . . . actively attended to [plaintiff's] needs and provided diagnostic procedures"). No dispute of material fact remains. Summary judgment was appropriate.

### III. *Conclusion*

Accordingly, we affirm the district court.

_____